## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

DONNA EPPS                                         *
315 Southeastern Terrace                           *
Essex, MD 21221                                    *
    *On her own behalf and on behalf*   *
    *of all others similarly situated,*  *
                   *

        Plaintiffs,               *
                   *
       v.               *    Case   No.   _____

JP Morgan Chase Bank, N.A. /                       *
Chase Auto Finance                                 *
35th Floor                                         *
270 Park Avenue                                    *
New York, NY 10017                                 *
Winston-Salem, NC 27104                            *

Serve on:                                          *
THE CORPORATION TRUST INCORPORATED *
351 West Camden Street                             *
Baltimore, MD 21201                                *

        Defendant               *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

2010 APR 27   PM 1:56
CIVIL DIVISION

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1.    The Plaintiff Donna Epps ("Named Plaintiff" or "Plaintiff"), on her own behalf and on behalf of all others similarly situated, files this Class Action Complaint and Demand for Jury Trial through her counsel, Peter Holland of The Holland Law Firm, PC; Scott C. Borison of The Legg Law Firm, LLC; and Jane Santoni of Williams & Santoni and for cause states:

2.    The Plaintiff files this complaint against the Defendant, JP Morgan Chase Bank, National Association / Chase Auto Finance ("CHASE") because CHASE violated Maryland commercial and common law, and breached contracts, when it repossessed and sold the plaintiff's and other class members' motor vehicles.

3.      The Named Plaintiff and others similarly situated purchased motor vehicles that were financed by retail installment sales contracts ("RISCs") that were assigned to CHASE. Later, CHASE repossessed and sold the plaintiff's and other class members' motor vehicles. These plaintiff and class members shall be referred to as the "Repossession Class."

4.      After repossessing the Repossession Class' motor vehicles, CHASE sent a form letter ("post-repossession form letter") to the class members that listed a dollar amount allegedly required to get the vehicle back, and stating that the car would be sold "sometime after [X Date]."

5.      Further, this post-repossession form letter (1) fails to give the location of the car once it is repossessed; and (2) implies, in violation of the law, that the consumer can redeem their car only by paying "the full amount you owe (not just the past due payments), including our expenses."

6.      CHASE sent no other letter to the Repossession Class before selling their motor vehicles.

7.      Most importantly, in its post-repossession form letter, CHASE failed to provide the Repossession Class with notice of the time and place of sale of the motor vehicle, as required by both Maryland law and the RISCs.

8.      The failure to provide the time and place of the sale of the cars was done knowingly by CHASE.

9.      When the Repossession Class did not pay the dollar amount demanded on the post-repossession form letter, CHASE sold their motor vehicles.

10.     After selling the Repossession Class' motor vehicles, CHASE sent them another form letter ("post-sale form letter").

11.     CHASE's post-sale form letters did not provide information about the sale that is

-2-

required to be disclosed by both Maryland Law and the RISCs. The missing information includes but is not limited to such basic information as: (1) the date, time and location of the sale; and (2) the number of bids sought and received at the sale. In other words, the consumer has no idea where the car was sold, the time the car was sold, or the number of bids sought and received at the sale. These omissions were knowing omissions.

12.     The proceeds from the sales of plaintiffs' motor vehicles generally did not cover the amount CHASE alleged was due under the RISCs. This resulted in an alleged deficiency balance for members of the Repossession Class.

13.     In its post-sale form letters, CHASE demands payment of the alleged deficiency.

14.     If the consumer borrower does not pay the alleged deficiency, CHASE files a collection lawsuit against the consumer or pursues other collection activities.

15.     As a result of CHASE's acts and omissions, Maryland law prohibits it from collecting any alleged deficiency that remained after the sale of the repossessed motor vehicles.  This prohibition applies to the Repossession Class.

16.     As a result of CHASE's acts and omissions, Maryland law entitles the Repossession Class to statutory damages, compensatory damages, treble damages, declaratory judgment, and injunctive relief.

17.     CHASE's violations of Maryland law have enriched Defendant unfairly at the expense of Maryland borrowers in the Repossession Class.

18.     CHASE's failure to comply with Maryland law is knowing.

19.     CHASE's use of form notices which fail to comply with Maryland law and its failure to provide notices required by Maryland law makes this case particularly suitable for resolution

through a class action lawsuit.

## PARTIES

20.     Named Plaintiff is a resident of Maryland who entered into a contract to purchase a vehicle from a Maryland dealership, and who entered into a Maryland retail installment sales agreement by which she financed the purchase of her vehicle.  This contract was assigned and sold to CHASE.

21.     CHASE is a corporation with its principal office in New York, but which is licensed to do business in Maryland, and which regularly conducts business and sues consumers in Baltimore City, Maryland.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over this case under Md. Cts. & Jud. Proc. § 6-103(b), because CHASE transacts business and performs work and provides services in Maryland, regularly does and solicits business in Maryland, and engages in other persistent courses of conduct in Maryland.

23.     Venue is proper in this Court under Md. Cts. & Jud. Pro. § 6-201, because CHASE carries on regular business in Baltimore City, Maryland, having filed 17 lawsuits in this venue in 2010 alone.

## FACTUAL ALLEGATIONS

24.     Named Plaintiff entered into a Retail Installment Sales Contract ("RISC") with Thompson Toyota Scion to finance a used PT Cruiser.  See **EXHIBIT 1**, CHASE letter to Named Plaintiff dated January 21, 2010.

25.     The Named Plaintiff purchased the car primarily for personal, household and family

purposes.

26.    The RISC was assigned to CHASE, which assumed the contract and received monthly payments, consisting of principal and interest, from the Named Plaintiff. See **EXHIBIT 1.**

27.    The RISC affirmatively elects to apply Subtitle 10 of Title 12 of the Commercial Law article to the contract. (i.e., Maryland's Credit Grantor Closed End Credit Provisions (hereafter abbreviated as "CLEC"). Specifically, paragraph 6 of the RISC states: "Applicable Law: Federal Law and Maryland Law apply to this contract. This contract shall be subject to the Credit Grantor Closed End Credit Provisions (Subtitle 10) of Title 12 of the Commercial Law Article of the Maryland Code."

28.    The RISC further states at paragraph 3f that: "we will send you a written notice of sale before selling the vehicle."

29.    On December 9, 2009, CHASE repossessed the Named Plaintiff's vehicle.

30.    On December 11, 2009, CHASE sent a post-repossession form letter to the Named Plaintiff, attached as **EXHIBIT 2,** telling her that her car would be sold "at a private sale sometime after 12/28/2009."

31.    Further, this post-repossession form letter (1) fails to give the location of the car once it is repossessed; and (2) implies, in violation of the law, that the consumer can redeem their car only by paying "the full amount you owe (not just the past due payments), including our expenses."

32.    **EXHIBIT 2** is known to be a form letter because of the legend at the lower left hand corner which states: "**CM6212 – MD Reinstate.**" On information and belief, this letter is identical (apart from the specific dollar amounts listed) to the post-repossession letters sent to every member of the Repossession Class.

33.     No further letters were sent to the Plaintiff before the car was sold. On information and belief, no further letters were sent to any member of the Repossession Class before the sale of their motor vehicles.

34.     On or about 2/19/2010, CHASE sent the Plaintiff a post-sale form letter, attached as **EXHIBIT 3.** This letter fails to provide either the number of bids sought or the number of bids received, in violation of CLEC. Further, it seeks $840.50 in undocumented "actual expenses" related to a sale which occurred at some undisclosed location to a purchaser allegedly by the name of "Manheim Fredericksburg."

35.     This post-sale form letter did not include mandated disclosures including but not limited to: the number of bids sought and received at the sale. On information and belief, none of the post-sale form letters sent to members of the Repossession Class included this information.

36.     Maryland's CLEC governs CHASE's repossession and sale of the Repossession Class' motor vehicles. CLEC requires that credit grantors such as CHASE provide 10-days' notice of the time and place of a sale of repossessed property, as well as provide an accounting after sale that includes, among other things: the number of bids sought and received at the sale.

(j)     *Sale or auction - Authorized; notice; commercially reasonable manner; accounting. --*
      (1)
          (i)     Subject to subsection (1) of this section, the credit grantor shall sell the property that was repossessed at:
              1.     Subject to paragraph (2) of this subsection, a private sale; or
              2.     A public auction.
          (ii)    **At least 10 days before the sale, the credit grantor shall notify the consumer borrower in writing of the time and place of the sale, by certified mail, return receipt requested, sent to the consumer borrower's last known address.**

-6-

      (iii)    Any sale of repossessed property must be accomplished in a commercially reasonable manner.

    **(2)**    **In all cases of a private sale of repossessed goods under this section, a full accounting shall be made to the borrower in writing and the seller shall retain a copy of this accounting for at least 24 months. This accounting shall contain the following information:**

    (i)    The unpaid balance at the time the goods were repossessed;

    (ii)    The refund credit of unearned finance charges and insurance premiums, if any;

    (iii)    The remaining net balance;

    **(iv)**    The proceeds of the sale of the goods;

    (v)    The remaining deficiency balance, if any, or the amount due the buyer;

    **(vi)**    **All expenses incurred as a result of the sale;**

    **(vii)**    **The purchaser's name, address, and business address;**

    **(viii)**    **The number of bids sought and received; and**

    **(ix)**    **Any statement as to the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality.**

Md. Comm. Law Art., § 12-1021 (j) (emphasis added).

37.    CHASE violated CL § 12-1021(j)(1)(ii) because its post-repossession form letter failed to provide Named Plaintiff 10-days notice of the time and place her car would be sold. **EXHIBIT 2**. On information and belief, CHASE's post-repossession letters to the Repossession Class also violated Md. Comm. Law Art., § 12-1021(j)(1)(ii) for the same reasons.

38.    Moreover, on information and belief, CHASE systematically and routinely fails to state the date of sale in its post-repossession form letters. On information and belief, CHASE's standard practice is to state that a repossessed vehicles will be sold "sometime after" a date on its post-repossession form letter but it never provides 10 days notice of the actual date of sale. Rather, the consumer learns of the actual sale date only after the sale has already occurred.

39.    The actual date and time and location of sale are material facts, and advanced notice

of them is required by CLEC.  By failing to accurately inform the Named Plaintiff and the
Repossession Class of advanced notice of the time and place of the sale, CHASE denied the Plaintiff
and the Repossession Class important rights and violated CLEC.

40.     CHASE's post-sale form letter also violates CL § 12-1021(j)(2) by failing to make the
full accounting required.  Among its deficiencies, the form notice failed to disclose the number of
bids sought and received. On information and belief, CHASE's post-repossession letters to the
Repossession Class also violated CL §12-1021(j)(2) for the same reasons.

41.     CHASE's failure to provide the full accounting and material facts whose disclosure is
mandated by CL § 12-1021(j) deprived the Named Plaintiff and members of the Repossession Class
of information to which they were entitled by law.  The disclosures mandated by CL § 12-1021(j) are
intended to help borrowers like the Named Plaintiff and the Repossession Class protect their interests
in their vehicles, and to hold credit grantors such as CHASE accountable for selling the vehicles in a
commercially reasonable manner.  Without disclosure of the information required by CL § 12-
1021(j), the Named Plaintiff and members of the Repossession Class do not know how long they
have to redeem the vehicles or whether CHASE's claimed deficiencies are reasonable and in
compliance with the law.

42.     Absent strict compliance with the statutorily required notices regarding repossession,
a Maryland credit grantor may not lawfully assess or collect any deficiency from consumer
borrowers, or any other person liable under the contract, following disposition of the repossessed
property.  CLEC specifically provides:

> If the provisions of this section, including the requirement of furnishing a notice
> following repossession, are not followed, the credit grantor shall not be entitled to
> any deficiency judgment to which he would be entitled under the loan agreement.

CL § 12-1021(k)(4).

43.    In addition, absent strict compliance with the statutorily required notices regarding repossession, a credit grantor "may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." CL § 12-1018(a)(2). Further, a credit grantor such as CHASE which knowingly violates any provision of the CLEC is liable for additional statutory damages of three times the interest, costs, fees and other charges collected in excess of that authorized by CLEC. CL § 12-1018(b).

44.    On information and belief, before selling a vehicle following its repossession, and as a part of its routine business practices in Maryland, CHASE systematically and regularly fails to send its Maryland customers a proper written notice via certified mail, return receipt requested, giving the customer at least 10 days notice of the time and place of the sale, in violation of CL § 12-1021(j)(1)(ii).

45.    On information and belief, as a part of its routine business practices in Maryland, CHASE unfairly and deceptively states simply that it will sell the vehicles if the consumers do not pay in full within 15 days.

46.    On information and belief, as a part of its routine business practices in Maryland, CHASE systematically and regularly sends post-sale form letters which do not provide the full accounting and disclosures mandated by CLEC at CL § 12-1021(j)(2). Specifically, CHASE routinely and regularly omits from its disclosures: (1) a statement of the purchaser's name, address, and business address, and (2) a statement of the number of bids sought and received.

47.    On information and belief, notwithstanding CHASE's failure to comply with CLEC's mandatory notice requirements, CHASE has knowingly assessed, demanded and attempted to collect

or has collected alleged deficiency balances from the Named Plaintiff and the Repossession Class, for which the borrowers were not liable as a matter of law.  On information and belief, CHASE has made unlawful collection demands to the Named Plaintiff and the Repossession Class for amounts exceeding four million dollars in the aggregate, has falsely represented to those borrowers that deficiency balances were owed, has collected money from borrowers to which they were not entitled, and has threatened to sue, and has sued, borrowers who did not owe any deficiency.

48.     On information and belief, at all relevant times, CHASE has had actual knowledge that the Named Plaintiff and the Repossession Class were not liable for any deficiency as a result of CHASE's failures to comply with CLEC, but has nevertheless persisted in its unlawful collection activities.  CHASE has not returned to the Named Plaintiff and the Repossession Class the interest, costs, fees and other charges which it must forfeit on each credit contract pursuant to CLEC, CL § 12-1018 (a)(2).  Unless and until this Court grants the declaratory and injunctive relief that Plaintiffs seek through this action, CHASE will continue to engage in business practices which violate CLEC and which result in deficiency judgments to which CHASE is not entitled.

## CLASS ACTION ALLEGATIONS

49.     The Named Plaintiff brings this action individually and on behalf of all persons similarly situated, known as the Repossession Class.

50.     The Repossession Class consists of:

**all persons whose vehicles were repossessed and sold by CHASE pursuant to a credit contract governed by CLEC, and as to whom CHASE:**

       **(a)     did not send the borrower a post-repossession letter that provided 10-days' notice of the time and date of sale as mandated**

**by CL § 12-1021(j)(1)(ii); and/or,**

(b)     **did not send the borrower the post-sale accounting and disclosures mandated by CLEC, § 12-1021 (j)(2).**

Excluded from the Class are (a) those individuals who now are or have ever been executives of the Defendant and the spouses, parents, siblings and children of all such individuals, (b) any individual who was not a resident of the State of Maryland as of the date that his or her vehicle was repossessed; (c) any individuals against whom a judgment has been granted in favor of CHASE on the account at issue on or before the date of the filing of this Complaint, (d) any individual who was granted a discharge pursuant to the United States Bankruptcy Code or state receivership laws after the date of his or her Installment Contract; and (e) any individual otherwise obligated on an Installment Contract account that was satisfied in full more than six months prior to the filing of this Complaint.

51.     The Repossession Class, as defined above, is identifiable. The Named Plaintiff is a member of the Repossession Class.

52.     The Repossession Class consists, at a minimum, of several hundred or thousands of persons who entered into credit contracts in Maryland which were assigned to CHASE and whose vehicles were subsequently repossessed and sold, and is thus so numerous that joinder of all members is clearly impracticable.

53.     There are questions of law and fact which are not only common to the Repossession Class but which predominate over any questions affecting individual class members. The common and predominating questions include, but are not limited to:

(a) Whether CHASE failed to provide notices required by and compliant with CLEC,

-11-

§ 12-1021(j)(1)(ii) to borrowers whose motor vehicles were repossessed;

(b) Whether CHASE failed to provide the full accounting and disclosures required by and compliant with CLEC, § 12-1021(j)(2) to borrowers whose motor vehicles were repossessed and sold at a private sale;

(c) Whether CHASE knowingly violated CLEC provisions and therefore should be required to pay three times the amount of interest, fees and other charges collected;

(d) Whether CHASE misrepresented in writing to the Repossession Class the Defendant's right to collect funds from members of the Class;

(e) Whether CHASE misrepresented in writing to the Repossession Class the motor vehicle's date of sale;

(f) Whether CHASE failed to identify the date, time and location at which the vehicles of Repossession Class' members would be sold;

(g) Whether CHASE breached the credit contracts it accepted for each Repossession Class member by failing to comply with CLEC;

(h)  Whether CHASE assessed, attempted to collect and/or collected deficiency balances from members of the Repossession Class that it had no legal right to demand or collect, and for which the Repossession Class members were not liable; and

(i) Whether declaratory and injunctive relief is proper, to prevent CHASE from continuing to seek deficiency judgments in violation of CLEC and to compel CHASE's compliance with CLEC.

54.    Claims of the Named Plaintiff are typical of the claims of the respective members of the Class within the meaning of Maryland Rule 2-231(a)(3), and are based on and arise out of similar

facts constituting the wrongful conduct of CHASE. The prosecution of separate actions by individual members of the Repossession Class would create a risk of establishing incompatible standards of conduct for CHASE, within the meaning of Maryland Rule 2-231(b)(1)(A).

55.     CHASE's actions are applicable to the Repossession Class as a whole, and Plaintiffs seek equitable remedies with respect to the Class as a whole, within the meaning of Maryland Rule 2-231(b)(2).

56.     Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Repossession Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Rule 2-231(b)(3). The likelihood that individual members of the Repossession Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation, and the fact that CHASE affirmatively misrepresents to consumers their rights and obligations. Plaintiffs' counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action. Named Plaintiff is adequate and will fairly represent the interests of the Repossession Class in accordance with their affirmative obligations and fiduciary duties.

**COUNT ONE**
**(MARYLAND CREDIT GRANTOR CLOSED END CREDIT PROVISIONS)**
**ON BEHALF OF THE REPOSSESSION CLASS**

57.     Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

58.     Maryland's Credit Grantor Closed End Credit Provisions, CL § 12-1001 *et seq.*, permit credit grantors such as CHASE to provide closed end credit under certain circumstances and subject to certain limitations, including compliance with CLEC provisions relating to repossession

and sale of motor vehicles.  If a credit grantor timely provides a borrower with the required post-repossession notices, accounting and disclosures mandated by CL § 12-1021(j), the credit grantor may obtain a deficiency judgment and retain the interest, costs, fees and other charges assessed during the course of its extension of credit.  In the event, however, that the credit grantor fails to timely provide the required post-repossession notices, accounting and disclosures, the credit grantor may not obtain a deficiency judgment (CL § 12-1021(k)(4)) and must forfeit all interest charges, fees and other charges with respect to the loan (CL § 12-1018(a)(2)).

59.     In violation of CL § 12-1021(j)(1)(ii), CHASE failed to notify the Named Plaintiff and members of the Repossession Class of the time and place where their repossessed vehicles would be sold in writing by certified mail, return receipt requested, sent to the borrower's home address at least ten days prior to the sale.

60.     In violation of CL § 12-1021(j)(2), CHASE failed to provide Named Plaintiff and members of the Repossession Class with a written full accounting and the disclosures mandated by this statute after the sale of the repossessed motor vehicles, including (1) a statement of the purchaser's name, address, and business address; and (2) a statement of the number of bids sought and received.

61.     CHASE knowingly violated  CLEC, § 12-1021(j), which makes it subject to mandatory trebling under CL Sec. 12-1018(b).

**COUNT TWO**
**(BREACH OF CONTRACT)**
**ON BEHALF OF REPOSSESSION CLASS**

62.     The Named Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

63.     Maryland's Credit Grantor Closed End Credit Provisions law was in effect at the time the credit contracts of the Named Plaintiff and all members of the Repossession Class were signed by them and assigned to CHASE. The provisions of the CLEC statute become a part of the contract just as if the parties expressly included the CLEC provisions in their credit contracts. In addition, CHASE's assignors explicitly referred to and incorporated CLEC in their contracts with the Named Plaintiff and the other members of the Repossession Class.

64.     When CHASE violated CLEC as set forth above, it materially breached its contracts with the Named Plaintiff and the members of the Repossession Class.

65.     As a result of CHASE's breaches of contract with the Named Plaintiff and members of the Repossession Class, the Named Plaintiff and members of the Repossession Class have been damaged. The Named Plaintiff and members of the Repossession Class have been deprived of the substantial rights granted to them by CLEC, including (1) the right to know when and where the sale of their vehicle would take place, (2) the ability to fully evaluate whether to reinstate their account or redeem their vehicle, (3) the information needed to evaluate whether CHASE's demand for payment of the alleged deficiency was reasonable, (4) the information needed to determine whether the sale of the vehicle was commercially reasonable, (5) the ability to determine whether there should have been surplus funds available for return by CHASE, (6) the information needed to defend against any suit for a deficiency judgment. In addition, the Named Plaintiff and the Repossession Class also sustained financial damages as a result of CHASE's failure to return all of the interest, costs, fees and other charges collected on their loans, and the Named Plaintiff and the Repossession Class sustained other damages and losses.

**COUNT THREE**
**(DECLARATORY AND INJUNCTIVE RELIEF)**

-15-

## ON BEHALF OF REPOSSESSION CLASS

66.     Named Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

67.     This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Cts. & Jud. Proc. § 3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations under the credit contracts of the Named Plaintiff and members of the Repossession Class and the consumer protections embodied in Maryland's Credit Grantor Closed End Credit Provisions.

68.     CHASE maintains it may collect a deficiency balance from members of the Repossession Class even though CHASE failed to provide the Named Plaintiff and members of the Repossession Class with timely and complete post-repossession notices required by CLEC.

69.     The Named Plaintiff and members of the Repossession Class have received or will receive collection notices from CHASE and/or debt collectors demanding payment of the alleged deficiency balance, and have been sued or will be sued for collection of the sums which CHASE alleges are due.  Moreover, CHASE also notifies credit reporting agencies to which it reports (including Equifax, TransUnion and Experian) of the alleged balances due, thereby damaging the credit scores and credit history of the Named Plaintiff and the Repossession Class.

70.     These practices continue and will continue unless and until this Court declares and affirms that CHASE may not collect any alleged deficiency balance unless CHASE has provided the Named Plaintiff and members of the Repossession Class with timely and complete notices containing the information whose disclosure is mandated by CLEC.

71.     This presents an actual, justiciable controversy between the parties relating to the

construction of the RISCs of members of the Repossession Class and the application of Maryland's Credit Grantor Closed End Credit Provisions to those contracts because CHASE has sought or likely will seek to collect on the alleged deficiency balances, including through filing a collection action in court, and CHASE continues to harm members of the Repossession Class by reporting false and derogatory information to credit reporting agencies regarding the accounts in question.

72. The Repossession Class have a right to be free from CHASE's attempts to collect deficiency balances, interest, fees, costs and other charges which are not collectible as a matter of law under the terms of its contracts with the Repossession Class.

73. The benefits to the Repossession Class in obtaining an injunction outweigh any potential harm CHASE would incur as a result of an injunction, under the balance of the harms test, as CHASE has no legal or contractual right to collect deficiency balances from the Repossession Class, and the Repossession Class would greatly benefit from being relieved of CHASE's attempts to collect these illegal charges.

74. The Repossession Class will suffer irreparable injury unless the requested injunctions are granted, as CHASE will continue to attempt to collect, and collect, deficiency balances, interest, costs, fees and other charges from them in violation of the law, and CHASE will report erroneous and derogatory information to the credit reporting agencies regarding the Repossession Class based on the illegally imposed charges.

75. The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing CHASE from violating the statutory and common law of the State of Maryland in its repossession and/or collection practices, and a compelling interest in seeing the laws of the State of Maryland obeyed.

-17-

76.     The Named Plaintiff and members of the Repossession Class are likely to succeed on the merits of this action, as CLEC explicitly requires that CHASE send certain notices to the Repossession Class that it did not send.

## COUNT FOUR
## (RESTITUTION AND UNJUST ENRICHMENT)
## ON BEHALF OF THE REPOSSESSION CLASS

77.     Named Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

78.     By paying money on deficiency balances, interest, fees, costs and other charges claimed by CHASE, the Named Plaintiff and Repossession Class conferred the benefit of these illegally collected charges upon CHASE.

79.     CHASE accepted the benefits conferred upon them by the Named Plaintiff and the Repossession Class when it accepted the money paid toward illegally assessed deficiency balances, interest, costs, fees and other charges.  CHASE was aware of, and had knowledge of, the benefits conferred on them, as it demanded those benefits.

80.     CHASE's collection, acceptance and retention of these charges, when it was not entitled to these charges as a matter of law, is and was and continues to be unjust and inequitable, and CHASE has not refunded the charges to the Named Plaintiff or members of the Repossession Class. CHASE should not be permitted to retain the benefits of those illegal charges. CHASE's continued withholding of the illegal charges is improper.

81.     The Named Plaintiff and members of the Repossession Class conferred these unjust benefits upon CHASE after and as a result of CHASE's illegal misconduct as set forth in this complaint.

## COUNT FIVE
### (MARYLAND CONSUMER PROTECTION ACT)
### ON BEHALF OF THE REPOSSESSION CLASS

82.    The Named Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

83.    Maryland's Consumer Protection Act ("CPA"), Md. Comm. Law Code Ann., § 13-101 *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices regarding, among other things, the extension of consumer credit and in the collection of consumer debts. CL § 13-303(3) and (4).

84.    As a "person" under the CPA, CL § 13-101(h), CHASE is prohibited from engaging in unfair and deceptive trade practices.

85.    The CPA specifically prohibits CHASE from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers. CL § 13-301(1).

86.    The CPA further prohibits CHASE from failing to state a material fact if the failure deceives or tends to deceive. CL § 13-301(3).

87.    In violation of the CPA, CL § 13-303(3)-(4) and § 1301(1), CHASE told the Named Plaintiff and the Repossession Class in writing that their vehicles would be sold on an unspecified date, at an unspecified time, in an unspecified location, thereby, among other things, misrepresenting the final date up to which the vehicle could be redeemed.  Further, CHASE notified the Named Plaintiff and the Repossession Class in writing that the Named Plaintiff and the Repossession Class owed CHASE deficiency balances which, in fact, the Named Plaintiff and members of the Repossession Class did not owe and which CHASE could not collect, due to its failures to comply

with the law. These written statements were false and misleading and tended to and did deceive the Named Plaintiff and the Repossession Class, many of whom made payments to CHASE which were not due and owing.

88.    In violation of the CPA, CL § 13-303(3) - (4) and § 13-301 (1) and (3), CHASE failed to disclose to the Named Plaintiff and the Repossession Class the date and time of sale, and the material facts that CHASE did not have the right to collect a deficiency judgment. This failure to disclose material facts led members of the Repossession Class to make payments which were not due and which they would not have made had CHASE informed them of the material facts.

89.    CHASE engaged in unfair and deceptive practices by collecting and attempting to collect on alleged debts which, in fact, were not due, and this conduct constitutes unfair and deceptive trade practices in violation of the CPA, § 13-101 *et seq.*, including CL §§ 13-303(3) and (4), and §§ 13-301(1) and (3).

90.    As a result of CHASE's unfair and deceptive trade practices in violation of the CPA, members of the Repossession Class were induced to make payments to CHASE on alleged deficiency balances, causing members of the Repossession Class injury or loss.

91.    In violation of the CPA, CL § 13-303(3) - (4) and § 13-301(1) and (3), and as part of an effort to compel the Named Plaintiff and the Repossession Class to make payments which were not due, CHASE made false and misleading reports to credit reporting agencies regarding the amounts which the Named Plaintiff and members of the Repossession Class owed on their accounts, causing injury or loss.

WHEREFORE, Plaintiffs pray that the following relief be granted to the Named Plaintiff and the Repossession Class on their claims set forth above:

A.      The Court enter a declaratory judgment establishing that CHASE may not collect any claimed deficiency balance, or any interest, fees, costs or other charges on a loan account of the Named Plaintiff and members of the Repossession Class;

B.      The Court enter an order granting the Named Plaintiff and members of the Repossession Class a preliminary and permanent injunction prohibiting CHASE from collecting or attempting to collect alleged deficiency balances, or interest, fees, costs or other charges from the Named Plaintiff and members of the Repossession Class;

C.      The Court enter an order requiring CHASE within 30 days to notify all credit reporting agencies to whom it reports that (i) the Named Plaintiff and members of the Repossession Class have a zero balance on their accounts, and (ii) removing any notation to the effect that the account has been charged off;

D.      The Court order that CHASE pay to the Named Plaintiff and members of the Repossession Class the statutory penalties imposed by CLEC, CL § 12-1018(a)(2) by returning to the Named Plaintiff and members of the Repossession Class all sums each paid as interest, costs, fees or other charges;

E.      The Court enter judgment in favor of the Named Plaintiff and members of the Repossession Class against CHASE in the amount of all sums paid by the Named Plaintiff and members of the Repossession Class toward the claimed deficiency balance, interest, fees, costs and other charges;

F.      Pursuant to CL § 12-1018(b), the Court enter judgment in favor of the Named Plaintiff and members of the Repossession Class against CHASE in an amount equal to three times the interest, costs, fees, and other charges which CHASE collected in

excess of that allowed by CLEC;

G.     The Court enter an award of pre-judgment and post-judgment interest on all sums

award to the Named Plaintiff and members of the Repossession Class;

H.     The Court award to the Named Plaintiff and members of the Repossession Class

reasonable counsel fees and the costs of these proceedings; and,

I.     The Court order such other and further relief as the nature of this case may require.

J.     In order to comply with recent Maryland case law, taking into consideration treble

damages, cancellation of alleged debt, and compensatory damages for injuries or

losses, the *ad damnum* clause at this time, subject to later modification upon further

discovery as to the size of the class, is $4,000,000 (Four Million Dollars).

Respectfully submitted,

PETER A. HOLLAND
The Holland Law Firm, P.C.
124 South Street, Ste. 3
Annapolis, MD 21401
(410) 280-6133

SCOTT C. BORISON
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, MD 21703
(301) 620-1016

JANE SANTONI
Williams and Santoni, LLP
401 Washington Ave., Ste. 200
Towson, MD 21204
(410) 938-8666

ATTORNEYS FOR THE NAMED PLAINTIFF
AND THE REPOSSESSION CLASS

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the classes, demands trial by jury.

PETER A. HOLLAND