IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DONNA EPPS, et al | * | |
| | * | |
| Plaintiff | * | |
| vs. | | |
| | * | Civil Case No. 1:10-cv-1504-WMN |
| JP MORGAN CHASE BANK, NA | * | |
| Defendant | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **MEMORANDUM IN SUPPORT OF**
## **MOTION FOR PARTIAL SUMMARY JUDGMENT**

INTRODUCTION

This case centers on the Defendant's conduct, after it repossessed automobiles owned by the Named Plaintiff and other similarly situated people. The Defendant ("CHASE") financed the purchase of these automobiles with form Retail Installment Sales Contracts that elected to be governed by the Credit Grantor Closed End Credit Provisions of the Maryland Commercial Law Article, Section 12-1001 et seq., ("CLEC"). (See Retail Installment Sales Contract ("RISC"), attached as **EXHIBIT 1** at paragraph 6. After CHASE repossessed the plaintiff's and other class members' automobiles, it violated the simple and straight forward consumer protection rules embodied in CLEC.

There is no genuine dispute as to any of the following material facts:

A. CHASE did not provide the location of the borrower's vehicle after repossession. See CHASE'S December 11, 2009 Post Repossession Notice attached as **EXHIBIT 2**.

    B.       CHASE did not provide 10 days' notice of the time and place of the sale of the plaintiffs' automobiles after repossession. See CHASE'S Post Repossession Notice attached as **EXHIBIT 2**.

    C.       CHASE did not, after the sale of these automobiles, notify the plaintiffs of (1) the number of bids sought; (2) the number of bids received; or (3) the date, time and location of the sale. See CHASE'S Post Sale Notice attached as **EXHIBIT** 3.

The above facts, in turn, provide a firm basis for the following findings:

    I.       CHASE's post-repossession form letters do not provide the specific location of the vehicle in violation of CLEC, Md. Comm. Law Art. § 12-1021 (e)(3).

    II.      CHASE fails to provide 10 days' notice of the time and place of sale, in violation of CLEC, Md. Comm. Law Art. § 12-1021(j)(1)(ii).

    III.     CHASE's failure to include the six important disclosures listed above in its post-sale notices violated CLEC, Md. Comm. Law Art. § 12-1021(j)(2).

    IV.     Because CHASE violated CLEC, Md. Comm. Law Art. §§ 12-1021(j)(1)(ii) and (j)(2), CHASE cannot recover deficiency judgments from the plaintiff class, and CHASE must return all the interest, costs, fees, and other charges that it collected from the plaintiff class.

    V.      The named plaintiff and the class members are entitled to treble the amount of finance and other charges, pursuant to CLEC 12-1018 since CHASE acted knowingly when it failed to comply with CLEC.

## BACKGROUND

The Named Plaintiff, Ms. Epps, filed this lawsuit on behalf of herself and a class of similarly situated people referred to as the "Repossession Class." The "Repossession Class" consists of all persons whose vehicles were repossessed and sold by CHASE pursuant to a credit contract governed by CLEC, and to whom CHASE either: (1) failed to send the a post-repossession letter that provided the exact location of the vehicle; or

(2) failed to send 10 days' notice of the time and place of sale; or (3) failed to send a post-sale letter with the disclosures mandated by CLEC.

The Repossession Class

The Named Plaintiff and the Repossession Class purchased automobiles from various car dealerships. In order to finance the purchase of these automobiles, the buyer and seller executed a form Retail Installment Sales Contract ("RISC") that was assigned by the seller to CHASE. See, **EXHIBIT 1** at bottom of page 1: "Seller assigns its interest in this contract to JP Morgan CHASE Bank, N A." The RISCs contain the following provision:

> "Applicable Law: …This contract shall be subject to the Credit Grantor Closed End Credit Provisions (Subtitle 10) of Title 12 of the Commercial Law Article of the Maryland Code." [otherwise known as "CLEC."]

See **EXHIBIT 1** at ¶ 6.

Under CLEC, the term "credit grantor" includes any assignee of the contract. See Md. Comm. Law § 12-1001 (g)(2)(iii).

CLEC addresses many aspects of closed end credit extensions, including repossession of personal property. A credit grantor may elect to have CLEC apply, and the credit grantor, including an assignee is bound by this election. Md. Comm. Law § 12-1013.1; *Biggus v. Ford Motor Credit Co.*, 328 Md. 188, 195-200, 203 (1992).

CLEC includes some very basic rules for credit grantors who repossess collateral. Md. Comm. Law § 12-1021. If these rules are not followed, then the credit grantor cannot obtain a deficiency judgment, and must, at the very least, return any interest, costs, fees, or other charges it received. *Id*. at § 12-1021(k)(4) and § 12-1018(a)(2); *Biggus*, 328 Md. at 204. A credit grantor who acts knowingly may also be liable for

3

treble the amount of finance and other charges paid by the consumer. Md. Comm. Law § 12-1018 (b).

CHASE repossessed the Named Plaintiff's and the Repossession Class's automobiles. CHASE then sent a form letter (attached as **EXHIBIT 2**) with the subject line "Re: Notice of our plan to sell the property." The letter fails to provide the exact location of the vehicle as required by § 12-1021 (e)(3).

The only reference to a sale is the sentence that states "We will sell your vehicle at private sale sometime after 12/28/2009" After it sent this letter, and without sending any other letters prior to the sale, CHASE then sold the Named Plaintiff's and Repossession Class's automobiles. In other words, CHASE never provided 10 days' notice of the time and place of sale as required by CLEC. See, Md. Comm. Law § 12-1021 (j)((1)(ii), which states: "At least 10 days before the sale, the credit grantor shall notify the consumer borrower in writing of the time and place of the sale, by certified mail, return receipt requested, sent to the consumer borrower's last known address."

The same letter (**EXHIBIT 2**) also states:

> You have additional rights under Maryland law…. You can redeem (get back) the Vehicle by paying us the total amount due under your contract…at any time prior to when we sell the vehicle.

In the absence of providing a specific sale date, a borrower has no way to determine when their ability to redeem the vehicle ends.

The only notice of the sale came after the sale occurred, when the Named Plaintiff and the Repossession Class received a letter (attached as **EXHIBIT 3**) that notified them of the "Deficiency Balance" that "you still owe us the amount stated on Line 7 (a) as a Deficiency Balance." This post-sale letter purported to be a comprehensive "accounting."

4

It did not, however, disclose: (1) the number of bids sought; (2) the number of bids received or (3) any statement as to the condition of the goods at the time of the repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind quality. This was a car bought by the Plaintiff less than a year earlier for $25,333.12 and it was allegedly sold for $2,900.00 to "Manheim Fredericksburg". [1]

The Named Plaintiff's automobile was repossessed on December 9, 2009. A letter dated December 11, 2009, she was sent the post-repossession form letter excerpted above (Re: Notice of our plan to sell the property). See **EXHBIT 2**. The letter did not provide the exact location of the vehicle. The letter did not provide the date of the sale. She did not learn of the sale until she received a letter that CHASE sent her on February 19, 2010 (attached as **EXHIBIT 3**). This February 19, 2010 letter demanded payment of $11,904.53. It did not, however, disclose: (1) the number of bids sought; or (2) the number of bids received or (3) any statement as to the condition of the goods at the time of the repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind quality.

STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] Plaintiff anticipates that the actual seller will turn out to be someone other than Manheim Fredericksburg because that is the entity that conducts private sales. However, this issue does not need to be decided for this motion since it would simply add an another violation of CLEC in addition to the ones addressed herein as to which there is no dispute.

Civ. Proc. 56. If summary judgment "is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue." *Id*. The court "should so determine by examining the pleadings and evidence before it and by interrogating the attorneys. It should then issue an order specifying what facts…are not genuinely at issue." *Id*. "An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages." *Id*.

> This Court has further explained:
>
>> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.
>>
>> The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial. The court should view the evidence in the light most favorable to…the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility. The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."

*Boulware v. Isaias Tessema*, 2009 WL 3806401 (D. Md. 2009) (numerous citations and quotations omitted).

## ARGUMENT

CHASE may not recover any deficiency from any borrower if it violated any provision of § 12-1021. See § 12-1021 (k)(4). Any violation of CLEC by CHASE also entitles the Plaintiff and the Repossession Class to the remedies allowed under § 12-1018.

Plaintiff can show that there is no genuine dispute that CHASE violated the provisions of § 12-1021 in three separate ways.

I. CHASE'S POST-REPOSSESSION FORM LETTERS DO NOT PROVIDE THE EXACT LOCATION OF THE VEHICLE TO THE NAMED PLAINTIFF AND THE REPOSSESSION CLASS, IN VIOLATION OF MD. COMM. LAW ART. § 12-1021(e)(3)

CHASE did not comply with a specific requirement that it provide the plaintiff and class members the exact location of their vehicle as required by § 12-1021 (e)(3). CHASE'S violation of this provision of CLEC is easily determined by a review of CHASE'S post repossession form letter. See **EXHIBIT 2**.

II. CHASE'S POST-REPOSSESSION FORM LETTERS DO NOT PROVIDE 10 DAYS' NOTICE OF THE TIME AND PLACE OF SALE TO THE NAMED PLAINTIFF AND THE REPOSSESSION CLASS, IN VIOLATION OF MD. COMM. LAW ART. § 12-1021(j)(1)(ii)

CHASE did not comply with one of the principal and most important provisions in CLEC:

> **At least 10 days before the sale, the credit grantor shall notify the consumer borrower in writing of the time and place of the sale**, by certified mail, return receipt requested, sent to the consumer borrower's last known address.

Md. Comm. Law Art. § 12-1021(j)(1)(ii) (emphasis added).

CHASE's post-repossession form letter does not accomplish this. In the form letter (attached as **EXHIBIT 2**), CHASE merely states that a sale will occur at some point after December 28, 2009. The location of the sale is not provided. Further, the borrower only finds out the car was sold when CHASE sends a letter (**EXHIBIT 3**) demanding payment of an alleged deficiency balance. Even that letter does not provide

7

the information mandated by CLEC; e.g., the number of bids sought and received and condition of the vehicle.

Interestingly, CHASE's post-repossession letter notes that the borrower has rights under Maryland law regarding the redemption of the vehicle. Yet, CHASE then fails to provide information relating to the sale date which provides a deadline for an exercise of the redemption right by the borrower. While it is clear that the failure to provide the sale date is a violation of CLEC, it is worth noting why the requirement of 10 days' notice of the time and place of sale exists. As the Court of Appeals of Maryland explained in *Maryland National Bank v. Walthen*:

> It is manifest that the debtor without notice of the sale can be effectively prevented from exercising his right of redemption. Furthermore, even if the debtor is not in a position to redeem, if he has notice, he may still be able to refinance and must therefore be capable of arranging for potential creditors to inspect the collateral. Alternatively, a debtor with notice may be able to procure interested buyers to drive up the level of competitive bidding. At the very least, notice provides the opportunity to attend the sale to insure that it is commercially reasonable…It was the secret disposition of collateral by chattel mortgage owners and others which…the Code sought to correct.'

288 Md. 119, 123 (1980) (internal citations omitted). (Note that CLEC was passed after this decision by the Court of Appeals).

CHASE did not provide the statutorily-required notices to the Repossession Class. Moreover, the failure to provide proper notices is not a mere 'technical' with insignificant implications; rather, it is a serious violation of a strict liability statute which was designed to protect consumers.

III. CHASE'S FAILURE TO INCLUDE THE REQUIRED DISCLOSURES IN ITS POST-SALE NOTICES TO THE NAMED PLAINTIFF AND THE REPOSSESSION CLASS VIOLATED MD. COMM. LAW ART. § 12-1021(j)(2)

After CHASE sold the Named Plaintiff's and the Repossession Class's automobiles, CLEC required CHASE to send a "full accounting…to the borrower in writing" that included:

> (viii) The number of bids sought and received;
> (ix) Any statement as to the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality.

Md. Comm. Law Art. § 12-1021(j)(2).

CHASE does not disclose this information in its post-repossession form letter, even though that very same letter states that the sale was a "private sale." See, **EXHIBIT 3.** Again: these defects are not mere technicalities. These disclosures the number of bids sought and received and the condition of the vehicle which may help explain why a vehicle sold one year earlier for over $25,000 is sold for only $2,900 are important safeguards against the potential abuses that attend the private sale of collateral. In fact, CLEC, when originally enacted, required that all sales of collateral be public sales. When the private sale option was added, the legislature, recognizing the potential for abuse, simultaneously added the various requirements that the creditor make the above disclosures. See, Acts of 1987, Chapter 765.

IV. BECAUSE CHASE VIOLATED MD. COMM. LAW ART. §§ 12-1021 (e)(3)and 12-1021(j)(1)(ii) AND (j)(2), CHASE CANNOT RECOVER DEFICIENCY JUDGMENTS FROM THE NAMED PLAINTIFF AND THE REPOSSESSION CLASS, AND CHASE MUST RETURN ALL THE INTEREST, COSTS, FEES, AND OTHER CHARGES THAT IT COLLECTED FROM THE NAMED PLAINTIFF AND THE REPOSSESSION CLASS

Because CHASE did not comply with several requirements of Md. Comm. Law Art. § 12-1021, it is "not entitled to any deficiency judgment to which [it] would be entitled under the loan agreement." *Id*. at § 12-1021(k)(4). This prohibition reflects the common-sense notion that:

> to permit recovery of a deficiency judgment absent notice would effectively nullify…important debtor's rights and permit 'a continuation of the evil which the Commercial Code sought to correct…[:]the secret disposition of collateral by chattel mortgage owners…'

*Maryland National Bank*, 288 Md. at 123 (internal citations omitted).

In addition, because CHASE's notices did not comply with CLEC required notices regarding repossession, CHASE "may collect only the principal amount of the loan," and must forfeit "any interest, costs, fees, or other charges with respect to the loan." *Id*. at § 12-1018 (a)(2). If these violations are found to be "knowing," then CHASE would have to return, in addition, three times that amount. *Id*. at § 12-1018 (b). The knowing requirement is easily satisfied here since CHASE's own letter noted the rights of the borrower under Maryland law. Further, the contract clearly sets forth that the loan was made under CLEC. CHASE is one of the five largest banks in the country. Therefore, any claim that it is ignorant of the law governing its contracts with at least 1200 Maryland residents lacks credulity.

The most recent reiteration of the firmly established maxim that "ignorance of the requirements of consumer protection laws is no excuse" comes from the Supreme Court:

> This case presents the question whether the "bona fide error" defense in § 1692k(c) applies to a violation resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA. We conclude it does not.

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 130 S. Ct. 1605, 1608 (U.S. 2010).

More germane to the case at bar, *Jerman* held:

> **Our law is therefore no stranger to the possibility that an act may be "intentional" for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law.**

*Id.* at 1612. (Emphasis added).

A knowing violation of a civil statute such as CLEC requires only a showing that the violator knows that he is engaging in the act that violates the law – evidence of a specific knowledge that the act violates the law is not required to find a knowing violation, or even a willful violation, as ignorance of the law is no excuse for its violation. *See, Jerman v. Carlisle, supra; Pacific Mortgage and Investment Group, Ltd. v. Horn,* 100 Md. App. 311 (1994); *Bond v. Polycycle, Inc.* 127 Md. App. 365 (1999); *Spencer v. Henderson-Webb*, 81 F. Supp. 2d 582, 594-95 (D. Md. 1999).

In *Pacific*, the Court of Special Appeals, in an appeal from summary judgment, rejected a lender's argument that it did not willfully violate a state lending law because it did not recognize that the loan was governed by the law it violated. 100 Md. App at 332. That case involved an extension of credit to a Maryland consumer in violation of the Maryland Consumer Loan Law ("MCLL"), and the consumer's claim that the lender had violated the law "willfully". *Id.* at 318-19. The lender argued that it did not believe the MCLL applied to the loan, it complied with the other law it thought applied to the loan, and therefore it could not have willfully violated the MCLL. *Id.* at 326-333. The court rejected that argument and said:

> Pacific's [the lender's] contention that its action were not willful is essentially based on the assertion that it did not realize the loan was

11

> governed by the MCLL and this it could not have violated a known legal duty… In a civil action, the word [willfully] often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental… Pacific does not dispute the fact that it intentionally, knowingly and voluntarily charged points on this loan; it admits it and argues that it was proper… Pacific did not accidentally charge points on the loan; it intentionally, knowingly and voluntarily charged points. Thus, Pacific acted willfully. The court did not err in granting appellee's [the consumer's] motion for summary judgment.

*Id*. at 331-33.

The Court of Special Appeals revisited the *scienter* issue of *Pacific* in a later case, *Bond v. Polycycle, Inc.*, 127 Md. App. 365 (1999). In *Polycycle*, the Court considered the issue of whether a person who took technology from a business did so "willfully" when the person thought he was entitled to take the technology. *Id.* at 380-81. The court referred to its holding in *Pacific* when discussing the issue and stated:

> [In *Pacific* w]e found that the lender willfully violated a statute… [i]n present case, it is undisputed that appellant took files from Polycycle and deleted files from its computers. This act was knowing, voluntary, and intentional. As made clear in Pacific, it matters not that the appellant believed that he was entitled to take the technology. Thus, we conclude that appellant acted willfully.

*Id.* at 381-82.

The federal courts also agree that ignorance of the law is no excuse, and will not provide a defense to a civil claim that a violation of the law was committed knowingly. *See Spencer v. Henderson-Webb*, 81 F. Supp. 2d 582, 594-95 (D. Md. 1999). In *Spencer*, the court held that a "knowledge" requirement for imposing statutory liability did not protect violators who mistakes of law. *Id.* The *Spencer* court considered a case asserting, *inter alia*, violation of the Maryland Consumer Debt Collection Act ("MCDCA") by a debt collection company. *Id*. at 588. The plaintiff in that case alleged the debt collector violated a provision of the MCSCA prohibiting a collector from "claiming, attempting, or

threatening to enforce a right with *knowledge* that the right does not exist." *Id*. at 594[emphasis added]. The defendant repeatedly claimed that its acts, including a misstatement of the applicable limitations period, were mistakes. *Id*. The court rejected the argument that the "knowledge" requirement of the MCDCA excused the debt collector from liability for its mistake of law concerning the limitations period. *Id*. at 594-95. The court stated:

> Considering the remedial aim of the MCDCA and the dilution of the statue that would result from a contrary interpretation the Court holds that the term 'knowledge' in the Act does not immunize debt collectors from liability for mistakes of law. This interpretation bears in mind the age-old maxim that ignorance of the law will not excuse its violation. *See Hopkins v. State,* 193 Md. 489, 498, 60 A.2d 456, 460 (1949), Moreover, in the context of consumer protection, 'it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.' *Russell v. Equifax A.R.S.* 74 F.3d 30, 35 (2d Cir.1996) (*citing FTC v. Colgate-Palmolive Co.* 380 U.S.374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904(1965)). Professional debt collectors and their attorneys therefore must be held to be aware of laws affecting the validity of their collection efforts. *Cf. Golt v.Phillips,* 308 Md. 1, 10, 517 A.2d 328, 332 (1986) (applying similar rule to landlords in consumer protection context).

*Id.*

The Supreme Court also explained that there is really no difference between knowing and willful in this context. The Court said: "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well". *Safeco Insurance Co. of America v. Burr*, 127 S.Ct. 2201, 2208 (2007). The Court went on to review the following:

> *McLaughlin v. Richland Shoe Co, 486 U.S. 128, 132-33, 108S.Ct. 1677, 100 L.Ed. 2d 115 (1988)* ("willful," as used in a limitation provision for actions under Fair Labor Standards Act, covers claims of reckless violation); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125-126, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (same, as to a liquidated damages provision of the Age Discrimination in Employment ct of 1967); cf.*United States v. Illinois Central R. Co.* 303 U.S. 239, 242-243, 58 S.Ct. 533, 82 L.Ed. 773 (1938) ("willfully," as used in a civil penalty provision,

13

included "'conduct marked by careless disregard whether or not one has the right so to act'" (quoting *United States v. Murdock,* 290 U.S. 289, 395, 54 S.Ct. 223, 78 L.Ed.381 (1933))). The construction reflects common law usage, which treated actions in "reckless disregard" of the law as "willful" violations. *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 34, p. 212 (5th ed. 1984) (hereinafter Prosser and Keeton) ("Although efforts have been made to distinguish" the terms "willful," and "wanton," and "Reckless," "such distinctions have consistently been ignored, and the three terms have been treated as meaning the same thing, or at least as coming out at the same legal exit"). The standard civil usage thus counsels reading the phrase "willfully fails to comply" in § 1681n(a) as reaching reckless FCRA violation, and this is so both on the interpretive assumption that Congress knows how we construe statues and expects us to run true to form, see *Commission v. Keystone Consol. Industries, Inc.* 508 U.S. 152, 159, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993), and under the general rule that a common law term in a statue comes with a common law meaning, absent anything pointing another way, *Beck v. Prupis,* 529 U.S. 494, 500-501, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000).

*Id.* 2208-2209 (footnote omitted).

CHASE was obligated to provide the exact location of the vehicle10 days notice prior to the sale date, and specific post sale information required by CLEC. As stated above, CHASE's post-repossession letter contemplates its own insufficiency. The letter states that the borrower can redeem until time of sale but then Chase fails to provide the sale date. The inclusion of this notice and the contract providing the specific law applicable to the contract to a lender with more than 1200 contracts subject to the same law supports a finding that CHASE acted knowingly when it violated CLEC.

## CONCLUSION

For the reasons stated in this memorandum, and pursuant to Fed. R. Civ. P. 56, the Named Plaintiff requests that this Honorable Court enter summary judgment as to the following issues:

I. CHASE's post-repossession form letters do not provide the specific location of the vehicle in violation of CLEC, Md. Comm. Law Art. § 12-1021 (e)(3).

II. CHASE fails to provide 10 days' notice of the time and place of sale, in violation of CLEC, Md. Comm. Law Art. § 12-1021(j)(1)(ii).

III. CHASE's failure to include the six important disclosures listed above in its post-sale notices violated CLEC, Md. Comm. Law Art. § 12-1021(j)(2).

IV. Because CHASE violated CLEC, Md. Comm. Law Art. §§ 12-1021(j)(1)(ii) and (j)(2), CHASE cannot recover deficiency judgments from the plaintiff class, and CHASE must return all the interest, costs, fees, and other charges that it collected from the plaintiff class.

V. The named plaintiff and the class members are entitled to treble the amount of finance and other charges, pursuant to CLEC 12-1018, because CHASE acted knowingly when it failed to comply with CLEC.

Respectfully submitted,

_____/s/_____
PETER A. HOLLAND
The Holland Law Firm, P.C.
124 South Street, Ste. 3
Annapolis, MD 21401
(410) 280-6133
Federal Bar No. 10866
peter@hollandlawfirm.com

SCOTT C. BORISON
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, MD 21703
(301) 620 1016
Federal Bar No. 22576
Borison@legglaw.com

JANE SANTONI
Williams & Santoni, L.L.P.
401 Washington Ave,
Suite 200
Towson, Maryland 21204
(410) 938-8666
Federal Bar No. 05303
jane@wiliams-santonilaw.com

Attorneys for the Named
                                                        Plaintiff and the Proposed
                                                        Class

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served on Counsel for the Defendant by ECF when it was filed.

_____/s/_____
PETER A. HOLLAND