IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONNA EPPS                          *
                                    *
v.                                  *
                                    *     Civil Action No. WMN-10-1504
JPMORGAN CHASE BANK N.A./           *
CHASE AUTO FINANCE                  *
                                    *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

Before the Court is a motion to dismiss filed by Defendant

JP-Morgan Chase Bank, N.A. (Chase).  Paper No. 11. [1]  The motion

is fully briefed.  Upon a review of the pleadings and the

applicable case law, the Court determines that no hearing is

necessary, Local Rule 105.6, and that the motion should be

granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On December 29, 2007, Plaintiff purchased a used car from

Thompson Toyota Scion (Thompson) pursuant to a retail

installment sale contract (RIC). [2]  The RIC was a form contract,

drafted by a legal forms company, and there is no allegation

---

[1] Also pending is a motion for class certification, Paper No. 10,
and Plaintiff has filed a motion for partial summary judgment.
Paper No. 16.  Because the Court will grant Defendant's motion
to dismiss, these motions are moot.

[2] Plaintiff complains that Thompson added extra "junk fees" to
the price of the vehicle and included an exorbitant interest
rate on the RIC.  See Opp'n at 1.  Plaintiff does not claim,
however, that these allegations concerning Thompson are relevant
to her claims against Chase.

that Chase had any role in its drafting. The RIC included the following provision: "Applicable Law: Federal law and Maryland law apply to this contract. This contract shall be subject to the Credit Grantor Closed End Credit Provisions (Subtitle 10) of Title 12 of the Commercial Law Article of the Maryland Code." Compl. ¶ 27; RIC (Def.'s Ex. A) ¶ 6.[3]

The Credit Grantor Closed End Credit statute (CLEC), Md. Code Ann., Comm. Law § 12-1021, provides that a credit grantor can repossess property securing a loan but only by following certain notice provisions. Specifically, CLEC requires that a notice be sent within five days after repossession that includes the borrower's rights to redeem the property, the borrower's rights as to a resale and liability for a deficiency, and the exact location where the property is stored. Id. § 12-1021(e). Furthermore, CLEC requires that, ten days before any sale, notice be given by specified means as to the time and place of the sale. Id. § 12-1021(j)(1)(ii). After a sale of repossessed goods, CLEC also requires a full accounting to the borrower which includes: expenses related to the sale; the purchaser's name, address, and business address; and the number of bids sought and received. Id. § 12-1021(j)(2).

---

[3] Although Plaintiff did not attach a copy of the RIC to the Complaint, it forms the basis of Plaintiff's claims and thus the Court can take notice of its terms in considering a motion to dismiss. Amer. Chiropractic v. Trigon Healthcare, 367 F.3d 212, 234 (4th Cir. 2004).

Shortly after Plaintiff purchased the vehicle, Thompson assigned the RIC to Chase.

Approximately two years after executing the RIC, Plaintiff stopped making payments and on December 9, 2009, the vehicle was repossessed. On December 11, 2009, Chase sent a written notice to Plaintiff explaining that it had possession of the vehicle and would sell it at a private sale "sometime after 12/28/2009." Compl., Ex. 2. The vehicle was sold on January 25, 2010. On February 19, 2010, Chase sent Plaintiff a notice informing her that the car had been sold to "Manheim Fredericksburg" and that a deficiency balance of $11,904.53 remained after the sale proceeds were applied to the debt owed and the expenses of the sale. Compl., Ex. 3.

On April 27, 2010, Plaintiff filed suit in the Circuit Court for Baltimore City alleging that Chase had violated the provisions of CLEC in that the pre-sale notice given to Plaintiff failed, inter alia, to give the location of the car once repossessed and the specific date and location of the sale. She also alleges that the post-sale notice failed, inter alia, to specify the number of bids sought and received. In addition to a claim for violation of CLEC (Count I), the Complaint also included claims for Breach of Contract (Count II), Declaratory and Injunctive Relief (Count III), Restitution and Unjust Enrichment (Count IV), and for a violation of the Maryland

Consumer Protection Act (CPA) (Count V).  Plaintiff
acknowledges, however, that all of these additional claims are
related to and derived from Chase's alleged failure to abide by
the provisions of CLEC.  <u>See</u> Opp'n at 2.  As relief, Plaintiff
seeks not only relief from paying the deficiency, but also,
pursuant to Md. Code Ann., Comm. Law § 12-1018(b),[4] the award of
three times the amount of any interest or charges Plaintiff has
paid to Chase.  Compl., Prayer for Relief ¶ F;  Opp'n at 24.

Chase timely removed the case to this Court pursuant to the
provisions of the Class Action Fairness Act of 2005.  Chase then
filed the instant motion to dismiss asserting that all of
Plaintiff's claims are preempted under federal banking law.  It
is undisputed that Chase is a national banking association,
organized and operating under the National Bank Act (NBA), 12
U.S.C. §§ 21 <u>et seq.</u>, and regulated by the Office of the
Comptroller of the Currency (OCC).  Chase contends that the NBA
and OCC regulations preempt any state laws that would impair,
prohibit or condition a national bank's lending practices,
including state laws seeking to regulate disclosures and notices
related to repossessions such as those contained in CLEC.

---

[4] Section 12-1018(b) provides that a knowing violator of any
provision of CLEC forfeit three times the amount of interest,
fees, and charges collected in excess of that authorized.

4

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). "Detailed factual allegations" are not required, but allegations must be more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action[.]" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563. In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

### III. DISCUSSION

Congress enacted the National Bank Act in 1864 to establish a national banking system. Through the NBA, Congress granted national banks broad authority to exercise "all such incidental powers as necessary to carry on the business of banking," including "loaning money on personal security." 12 U.S.C. § 24 (Seventh). Also through the NBA, Congress gave OCC the authority to implement the NBA and regulate the national banks. 12 U.S.C. § 93a.

Under the Supremacy Clause, federal law preempts state law where Congress so intends. U.S. Const., Art. VI, cl. 2; <u>Fid. Fed. Savs. & Loan Ass'n v. de la Cuesta</u>, 458 U.S. 141, 152 (1982). While the NBA does not expressly preempt state regulation of national banks, the OCC has issued regulations expressly preempting state laws that interfere with a bank's ability to make non-real estate loans. See 12 C.F.R. § 7.4008(d).[5] Courts have recognized that regulations issued by a federal agency like OCC have no less preemptive effect than federal statutes. <u>de la Cuesta</u>, 458 U.S. at 153. Furthermore, because the history of national banking legislation has been "one of interpreting grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally

---

[5] The OCC has also clarified that "a national bank-owned RIC is the equivalent of a national bank loan." OCC Interp. Letter No. 1095 (Feb. 27, 2008).

limited by, but rather ordinarily pre-empting, contrary state law," Barnett Bank of Marion Cnty., N.A. v. Nelson, 517 U.S. 25, 32 (1996), the usual presumption against federal preemption of state law is inapplicable to federal banking regulations. Wells Fargo Bank, N.A. v. Boutris, 419 F.3d 949, 956 (9th Cir. 2005).

The preemption regulations issued by OCC state:

(1) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks.

(2) A national bank may make non-real estate loans without regard to state law limitations concerning . . .

> (iv) The terms of credit, including the schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan . . .

> (vi) Security property, including leaseholds . . .

> (viii) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents . . . .

12 C.F.R. § 7.4008(d).

Courts that have considered state laws that, like CLEC, seek to regulate the notices and disclosures given to borrowers

in conjunction with the repossession and disposal of property securing non-real estate loans have held that these state laws are preempted under the NBA and OCC regulations, specifically, 12 C.F.R. § 7.4008(d)(viii).  See Perez v. Midland Funding, LLC, Civ. No. 10-1916, 2010 WL 4117461 (N.D. Cal. Oct. 19, 2010); Aguayo v. U.S. Bank, F. Supp. 2d 1226 (S.D. Cal. 2009).  In Perez and Aguayo, the plaintiffs purchased vehicles under RICs that were then assigned to national banks.  After their vehicles were repossessed, the plaintiffs alleged that the notices issued by the banks failed to comply with California's Rees-Levering Automobile Sales Finance Act (Rees-Levering Act), Cal. Civ. Code § 2981 et seq.  Like Maryland's CLEC, California's Rees-Levering Act imposes certain timing and content requirements on post-repossession notices.

In holding that the Rees-Levering Act was preempted, the Aguayo court concluded that "by enforcing additional post-repossession notice requirements on national banks, and voiding deficiency judgment for failure to abide by its notice requirements, the Rees-Levering Act directly regulates the disclosure practices of national banks."  658 F. Supp. 2d at 1232.  Referencing the language of § 7-4008(d)(viii), the court concluded the Rees-Levering Act's requirements were "undoubtedly disclosure requirements."  Id.  In also concluding that the post-repossession notice qualifies as a "credit-related

document," the court noted that the national bank "supplied the post-repossession notice during the continuing credit relationship between the debtor and the bank. . . . '[T]he purpose of such notice is to notify a debtor that his or her <u>credit</u> was revoked and that the collateral with which the debtor secured the credit is being sold, as well as to inform the debtor what he or she needs to pay in order to restore his or her <u>credit</u>.'" <u>Id.</u> at 1233 (quoting <u>Crespo v. WFA Fin. Inc.</u>, 580 F. Supp. 2d 614, 623 (N.D. Ohio 2008), emphasis added in <u>Aguayo</u>).

Relying on <u>Aguayo</u>, the <u>Perez</u> court reached the same conclusion. 2010 WL 4117461 at *5. Furthermore, within the context of the statutory and regulatory framework governing national savings and loan associations,[6] the Northern District of Ohio found that state laws governing post-repossession notices similar to CLEC to be preempted by regulatory language nearly identical to that found in § 7.4008(d). <u>See</u> <u>Crespo</u>, 580 F. Supp. 2d at 618-19.[7]

---

[6] The Home Owners Loan Act (HOLA), 12 U.S.C. § 1461 <u>et seq.</u>, empowered what is now the Office of Thrift Supervision (OTS) in the Treasury Department to authorize the creation of federal savings and loan associations, to regulate them, and by its regulations to preempt conflicting state law. <u>See</u> <u>In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.</u> 491 F.3d 638 (7th Cir. 2007).

[7] The analogue to § 7.4008 in the saving association context is 12 C.F.R. § 560.2. That regulation lists among the types of

Largely ignoring or simply dismissing as poorly decided those cases that are most directly on point, Plaintiff makes a wide variety of arguments as to why her claims are not preempted. First, Plaintiff presents a number of reasons why she believes that OCC's preemption regulation does not reach post-repossession notices, including: NBA preemption is limited to claims of usury; the notices are not "credit documents" and under the "ejusdem generis rule," do not fall within the scope of the regulation; there is no federal law that directly conflicts with CLEC and only state laws that directly conflict with federal laws are preempted; and preemption would impermissibly deprive Plaintiff of a remedy for violations of other provisions of the OCC regulations. Plaintiff also argues that, even if the notices are encompassed under § 7.4008(d), the "savings clause" in § 7.4008(e) permits her claims to go forward. Plaintiff's next argument appears to be that NBA preemption is only applicable when the national bank is a party to the original transaction and acquisition of a loan by a national bank cannot alter the terms of the agreement. Related

_____

state law that are preempted laws that purport to impose requirements regarding "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants." 12 C.F.R. § 560.2(b)(9).

to this argument is Plaintiff's contention that the "Federal Trade Commission (FTC) Holder Rule" allows her to assert any claim against Chase that she could assert against Thompson. Finally, Plaintiff argues that her contract action survives as an independent claim because compliance with CLEC was incorporated as a term in the RIC. The Court will address each argument seriatim but finds none persuasive.

From what source Plaintiff derived her conclusion that "[i]n the absence of a claim for usury, the NBA cannot and does not completely preempt the Plaintiff's claims," Opp'n at 7, is somewhat of a mystery. Plaintiff cites a single case, Beneficial Nat. Bank v. Anderson, 539 U.S. 1 (2003), that does stand for the proposition that the NBA completely preempts state law usury claims. 539 U.S. at 11. No language in that case, however, suggests that NBA preemption is limited to state usury claims. Plaintiff's conclusion to the contrary is belied by the fact that § 7.4008 lists ten categories of state laws that are preempted, only one of which is directly related to interest rates. 12 C.F.R. § 7.4008(d)(2).

Plaintiff's ejusdem generis argument is also without support. This general rule of statutory interpretation suggests that "when general words follow specific words in a statutory enumeration, . . . [courts] construe the general words to embrace only objects similar in nature to those objects

enumerated by the preceding specific words." <u>Ayes v. U.S. Dept.</u>
<u>of Veterans Affairs</u>, 473 F.3d 104, 109 n.3 (internal quotations
omitted, emphasis in <u>Ayes</u>).  First, the Court would note that
post-repossession notices are as similar to billing statements
as the other documents included in the regulation are to each
other, <u>e.g.</u>, a credit application form and a billing statement.
Both the billing statement and the post-repossession notice
reflect the current status of the credit arrangement and
proscribe the action to be taken by the borrower.[8]  Second, as
noted by Defendant, the listing of "credit-related documents"
appears in the regulation <u>after</u> the broader specification of all
"disclosure and advertising" laws.  Thus, as long as the state
law concerns disclosures that must be made by a national bank,
it need not fit into a category of credit-related documents in
order to be covered under the regulation.

Plaintiff next argues that, in the absence of either a
provision in the NBA that directly addresses the repossession of
collateral, or a provision in the NBA that provides a remedy for
failure to follow specific repossession provisions, or both,

---

[8] Plaintiff posits that in "stark contrast" to the other credit
related documents listed in the regulation, "the repossession of
a vehicle does not involve the disclosure of credit terms to a
consumer.  All the terms of the credit – and the disclosure of
those terms has already occurred in the transaction."  Opp'n at
16.  That same observation, of course, would also be true of
billing statements which are identified as credit related
documents.

there is no basis to conclude that the NBA preempts any of
Plaintiff's claims.  Opp'n at 7.  As to Plaintiff's direct
conflict argument, courts have not construed NBA preemption so
narrowly.  As noted above, in the NBA, Congress granted national
banks "all such incidental powers as shall be necessary to carry
on the business of banking," including, "loaning money on
personal security."  12 U.S.C. § 24 (Seventh).  State laws that
would significantly burden, interfere or impair the exercise of
those powers are preempted.  Watters v. Wachovia Bank, N.A., 550
U.S. 1 (2007).  The burden that would be imposed on national
banks of complying with the various notice and disclosure
statutes of all fifty states is readily apparent.  See Def.'s
Reply at 13 & n.7 (comparing repossession notice provisions from
several different states).

    In support of her "lack of remedy" argument, Plaintiff
cites two decisions: Ocwen, supra, n. 6; and College Loan Corp.
v. SLM Corp., 396 F.3d 588 (4th Cir. 2005).  Ocwen, which was
decided under HOLA and the OTS's regulations governing saving
associations, simply held that, in light of the "limited
remedial authority" given the OTS, preemption under HOLA "does
not deprive persons harmed by the wrongful acts of savings and
loan associations of their basic state common-law-type
remedies."  491 F.3d at 643.  Quoting an OTS opinion letter, the
court explained that OTS "does not intend to preempt state laws

13

that establish the basic norms that undergird commercial transactions," such as state laws "prohibiting deceptive acts and practices in the course of commerce." Id. at 644.

The Ocwen court's delineation of what claims are and are not preempted is illustrative. The court opined that if an saving and loan association entered a mortgage agreement with an annual interest rate of 6 percent, and then proceeded to bill the homeowner at a rate of 10 percent and institute foreclosure proceedings when the homeowner refused to pay, "[i]t would be surprising for a federal regulation to forbid the homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract." Id. at 643-44. Similarly, "if a mortgagee . . . fraudulently represents to the mortgagor that it will forgive a default, and then forecloses, it would be surprising for a federal regulation to bar a suit for fraud." Id. at 644. In contrast, the court gives examples of claims that are clearly preempted: claims based upon a mortgagee's "failing to provide mortgagors with adequate monthly statements of their account balances, assessing 'excessive' late fees, and 'force placing insurance on properties that already have insurance coverage;'" claims based upon the violation of a state statute "which forbids imposing a late charge for an installment payment that is no more than ten days late;" or claims for "charging unreasonable fees," or "failing to provide borrowers with

14

itemizations." Id. at 645-47. These claims, the court held,

"could interfere with federal regulation of disclosures, fees,

and credit terms." Id. at 646.

Here, Plaintiff is not alleging the kind of tort or breach

of contract that is premised on violations of the "basic norms

that undergird commercial transactions," or pursuing "basic

common-law-type remedies." Instead, she is seeking specific

statutory remedies under a state statute, not actual damages for

a breach of contract or tort. Enforcing those remedies would

interfere with federal regulation of national banks.

Similarly, in College Loan Corp., a decision which was

quoted at length by Plaintiff, the Fourth Circuit simply held

that where parties to an agreement "voluntarily included federal

standards (the HEA)[9] in their bargained-for private contractual

arrangement" and where "[b]oth expressly agreed to comply with

the HEA," a state law contract claim based in part on a breach

of those standards would not be preempted. 396 F.3d at 598

(emphasis in original). To find preemption in that context, the

court opined, would permit a party "to enter into a contract

that invoked a federal standard as the indicator of compliance,

then to proceed to breach its duties thereunder and to shield

its breach by pleading preemption." Id. As discussed below,

neither Thompson nor Chase voluntarily included compliance with

[9] Higher Education Act of 1965, 20 U.S.C. § 1001 et seq.

CLEC in the RIC and, therefore, College Loan Corp. is
inapposite.

Plaintiff's "savings clause" argument is closely related to
her lack-of-remedy argument.  The savings clause in the
regulation provides that state laws on certain subjects "are not
inconsistent with the non-real estate lending powers of national
banks and apply to national banks to the extent that they only
incidentally affect the exercise of national banks' non-real
estate lending powers."  12 C.F.R. § 7.4008(e) (emphasis added).
The subjects listed in the saving clause are: contracts, torts,
criminal law, rights to collect debts, acquisition and transfer
of property, taxation, zoning, and "[a]ny other law the effect
of which the OCC determines to be incidental to the non-real
estate lending operations of national banks or otherwise
consistent with the powers set out in paragraph (a) of this
section."  Id.  Paragraph (a) sets forth the powers of national
banks to "make, sell, purchase, participate in, or otherwise
deal in" non-real estate loans and interests in non-real estate
loans, "subject to such terms, conditions, and limitations
prescribed by the Comptroller of the Currency and any other
applicable Federal law." 12 C.F.R. § 7.4008(a).

Plaintiff contends that her Complaint involves contract,
tort, and "rights to collect debts" and thus falls under the
savings clause.  Even if true, Plaintiff completely ignores that

portion of the savings clause limiting its reach to saving just those laws that only incidentally affect the exercise of national banks' non-real estate lending powers. Plaintiff does not explain, nor could she, how laws that would completely invalidate any debts where the national bank does not strictly comply with those laws' notice and disclosure requirements would "only incidentally" affect that bank's lending operations.

Plaintiff next argues that preemption should not allow a national bank to alter existing contracts subject to state law simply by buying the loan from a non-bank. Plaintiff sees such a situation as granting banks a "Midas touch" to alter existing contracts, as "unworkable," and as opening a "legal Pandora's box." Opp'n at 8, 4. In support of this argument, Plaintiff cites three cases: Ocwen; Thomas v. U.S. Bank Nat. Ass'n ND, 575 F.3d 794 (8th Cir. 2009); and FDIC v. Lattimore Land Corp., 656 F.2d 139 (5th Cir. 1981).

Plaintiff quotes the following language from Ocwen:

> If an original mortgagee can be sued under state law
> for breach of contract, so may the partial assignee if
> he violates the terms of the part of the mortgage
> contract that has been assigned to him.

Opp'n at 9 (quoting Ocwen, 481 F.3d F.3d at 645). As explained above, however, the Seventh Circuit in Ocwen drew a distinction between "basic state common-law remed[ies]," which are not preempted, and those claims that would interfere with federal

regulation of disclosures, fees, and credit terms, which are preempted. The two sentences that appear immediately above the language quoted by Plaintiff but which Plaintiff omitted make it clear that the court was addressing claims that fall into the former category: "We would have a different case if state law purported to forbid servicing or prescribe the terms of the assignment - suppose a state tried to limit the rights that the assignment conferred on the servicing S & L. But nothing like that is suggested here." 491 F.3d at 645.

Plaintiff also pulls language out of context in her quotation of Thomas. In Thomas, a state bank originated mortgages that included fees that violated state mortgage laws. After the mortgages were assigned to national banks, the mortgagors sued the national banks and the national banks argued preemption. The Eighth Circuit rejected that argument, quoting a federal statute, 15 U.S.C. 1641(d), that specifically provides that "[a]ny person who purchases or is otherwise assigned a [tainted] mortgage . . . shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the [original lender]." 575 F.3d at 801 (alterations in Thomas). In addition to the Eighth Circuit's reliance on a federal statute that is not implicated here, Thomas is also distinguishable in that, unlike here, the alleged

violations of the law had taken place <u>before</u> the assignments and were violations of the assignor, not the assignee national bank.

Similarly, <u>Lattimore Land</u> dealt with the issue of whether an assignment of a mortgage note could alter the legal significance <u>of pre-assignment conduct</u>.  In that case, the issue was whether assignment to a national bank could render usurious under the NBA a note that was non-usurious when originated.  The court simply held that the "non-usurious character of the note should not change when the note changes hands," noting that the national bank was not the lender and thus did not violate the NBA's usury provisions.  The case says nothing about preemption.

Plaintiff turns next to the FTC Holder Rule for support of her position.  That notice, required by FTC regulation and included on the RIC, reads: "NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES <u>WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER</u> OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF."  RIC at 2; 16 C.F.R. § 433.2(b).  In this action, however, Plaintiff is not attempting to assert against Chase, the holder, a claim she had against Thompson, the seller.  Her claim attacks only the conduct of Chase and therefore the Holder Rule is inapposite.

Finally, Plaintiff argues that, notwithstanding any preemption of her CLEC related claims, she can go forward with her breach of contract claim because compliance with CLEC was

included as a term in the RIC.  In moving to dismiss the
contract claim, Chase noted that any lender that elects to take
advantage of CLEC's interest rate and fee authority is required
to include in the RIC a provision that CLEC applies to the loan.
Mot. at 15 (citing Md. Code Ann., Com. Law § 12-1013(a)(2)
(requiring the written election in the agreement, note or other
evidence of the loan in order to make a loan under that
subtitle)).  See generally, Biggus v. Ford Motor Credit Co., 613
A.2d 986 (Md. 1992) (discussing legislative history of CLEC, the
advantages of CLEC to lenders and how election of CLEC
applicability is expressed in contract documents).  Under
Maryland law, where one party to a contract had no choice but to
include in that contract a provision calling for the
applicability of a particular law, the other party to the
contract cannot assert a breach of contract claim based on a
violation of that law.  Wells Fargo Home Mortgage v. Neal, 922
A.2d 538, 545-46 (Md. 2007).

In Neal, the lender was required to use a form deed of
trust, created by the Fair Housing Administration (FHA), in
order to originate any FHA insured loan.  That form deed of
trust included, by way of notice, certain regulations issued by
the Department of Housing and Urban Development (HUD) mandating
various pre-foreclosure loss mitigation procedures.  In holding
that the mortgager could not bring a breach of contract claim

based upon the inclusion of the HUD regulations in the deed of trust, the Maryland Court of Appeals concluded that compliance with those regulations was not "an undertaking voluntarily assumed" by the lender.  Id. at 545.  In reaching that holding, the Court of Appeals distinguished the case before it from the cases relied upon by Plaintiff, Wells v. Chevy Chase Bank, F.S.B., 832 A.2d 812 (Md. 2003) and College Loan Corp., supra.  Both of those cases, the court observed, "involved private parties entering into contracts which contained voluntarily incorporated references to state or federal statutes or regulations as binding terms governing the parties' performance."  922 A.2d at 544 (emphasis added).

In seeking to distinguish Neal, Plaintiff posits that, "in Neal, the court was dealing with provisions imposed through government regulations that left the parties no options.  Here, there were options."  Opp'n at 19.  The only option to which Plaintiff seems to allude, however, is the option of not entering into the agreement at all.  The plaintiff in Neal made essentially the same argument, i.e., because the defendant voluntarily chose to participate as a lender in the FHA mortgage insurance program, it necessarily elected to accede to the FHA regulations.  922 A.2d at 544.  The Maryland Court of Appeals rejected the argument.

## IV. CONCLUSION

For these reasons, the Court finds that all of Plaintiff's claims are preempted and the case must be dismissed.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: November 19, 2010.