IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONNA EPPS                          *
                                    *
v.                                  *
                                    *    Civil Action No. WMN-10-1504
JPMORGAN CHASE BANK N.A./           *
CHASE AUTO FINANCE                  *
                                    *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM

Pending before the Court is a motion to dismiss, ECF No. 40, filed by Defendant, JP Morgan Chase Bank, N.A. (Chase), and a renewed motion for class certification, ECF No. 39, filed by Plaintiff, Donna Epps (Epps).

Upon consideration of the pleadings, facts, and applicable law, the Court determines that (1) no hearing is necessary, Local Rule 105.6, (2) Chase's Motion to Dismiss will be granted in part and denied in part, (3) Epps' Renewed Motion for Class Certification will be denied, and (4) the case will be remanded to the Circuit Court for Baltimore City pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.

I.   FACTUAL AND PROCEDURAL BACKGROUND

This case is currently before the Court on remand from the Fourth Circuit Court of Appeals.  On April 5, 2012, the Fourth Circuit vacated this Court's previous judgment which granted Chase's Motion to Dismiss on the ground that Epps' claims were

preempted by the National Banking Act, 12 U.S.C. § 1 et seq.
Epps v. JP Morgan Chase Bank, N.A., 675 F.3d 315 (4th Cir.
2012).  Chase has now moved to dismiss Epps' claims pursuant to
Fed. R. Civ. P. 12(b)(6) and Epps has renewed her motion for
class certification which was originally denied as moot.

In light of this procedural history, the alleged facts are
well known to both parties and to the Court. On December 29,
2007, Epps purchased a used car from Thompson Toyota Scion
(Thompson) pursuant to a retail installment sale contract (RIC).
The RIC was a form contract, drafted by a legal forms company,
and there is no allegation that Chase had any role in its
drafting.  The RIC included the following provision: "Applicable
Law: Federal law and Maryland law apply to this contract.  This
contract shall be subject to the Credit Grantor Closed End
Credit Provisions (Subtitle 10) of Title 12 of the Commercial
Law Article of the Maryland Code."  Compl. ¶ 27; ECF No. 40-1
(Def. Mem in Support of MTD), Ex. A ¶ 6.[1]  Shortly after Epps
purchased the vehicle, Thompson assigned the RIC to Chase.

Approximately two years after executing the RIC, Epps
stopped making payments and on December 9, 2009, the vehicle was

---

[1] Although Epps did not attach a copy of the RIC to her
Complaint, it forms the basis of her claims and thus the Court
can take notice of its terms in considering a motion to dismiss.
Amer. Chiropractic v. Trigon Healthcare, 367 F.3d 212, 234 (4th
Cir. 2004).

repossessed.  On December 11, 2009, Chase sent a written notice to Epps explaining that it had possession of the vehicle and would sell it at a private sale "sometime after 12/28/2009." Compl., Ex. 2.  The vehicle was sold on January 25, 2010.  On February 19, 2010, Chase sent Plaintiff a notice informing her that the car had been sold to "Manheim Fredericksburg" at a private sale and that a deficiency balance of $11,904.53 remained after the proceeds were applied to the debt owed and the expenses of the sale.  Compl., Ex. 3.

On April 27, 2010, Epps filed suit in the Circuit Court for Baltimore City alleging that Chase had violated the provisions of the Maryland Credit Grantor Closed End Credit Statute (CLEC), Md. Code Ann. Com. Law § 12-1001 et seq., in that the pre-sale notice she received from Chase failed, inter alia, to give the location of the car once repossessed and the specific date and location of the sale.  She also alleges that the post-sale notice failed, inter alia, to specify the number of bids sought and received.  In addition to a claim for violation of CLEC (Count I), the Complaint also includes claims for Breach of Contract (Count II), Declaratory and Injunctive Relief (Count III), Restitution and Unjust Enrichment (Count IV), and for a violation of the Maryland Consumer Protection Act (CPA) (Count V).  Chase timely removed the case to this Court pursuant to the

provisions of the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. 1332(d).

The present Motion to Dismiss and Renewed Motion for Class Certification were filed on the same day.  Because the motions implicate related issues and the order in which the Court will handle them merits some comment.[2]  Epps filed her Complaint on behalf of herself and those similarly situated whom she identifies as the "Repossession Class."  Compl. ¶¶ 49-56.  She requests that this Court certify such a class pursuant to Fed. R. Civ. P. 23.  Chase has moved to dismiss Epps' Complaint arguing that she has failed to allege that she, apart from any of the putative class members, has suffered any damages.  Def. Mem. in Support of MTD at 5.  As a result, Chase's argument not only addresses Rule 12(b)(6), but also touches on the requirements for class certification under Rule 23(a). Specifically, Rule 23(a)(3) requires that Epps' claims be "typical" of the claims of the class she seeks to represent. Because Epps' claims cannot be "typical" within the meaning of Rule 23(a)(3) if she does not have a claim herself, the Court will consider Chase's Motion to Dismiss before turning to Epps' Motion for Class Certification.  See Zimmerman v. HBO Affiliate

---

[2] As discussed more fully in Part C, this Court has jurisdiction pursuant to the Class Action Fairness Act of 2005.  Under CAFA, this Court has jurisdiction until class certification is denied under Fed. R. Civ. P. 23(c).  28 U.S.C. § 1332(d)(8).

Group, 834 F.2d 1163, 1170 (3d Cir. 1987) ("[W]e find no abuse

of discretion in the district court's refusal to consider

certification of a class before determining whether the named

plaintiff, and a fortiori any putative class which the named

plaintiff might properly seek to represent, had a federal cause

of action.") (internal citations omitted); cf. Muhammad v. Giant

Food, 108 Fed. App'x 757, 765 n.5 (4th Cir. 2004) (and cases

cited therein)(discussing impact of granting summary judgment

against named plaintiff prior to class certification).

## II.  DISCUSSION

### A.  CHASE'S MOTION TO DISMISS

#### 1. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint

must contain sufficient factual matter . . . to 'state a claim

to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  Id. (citing

Twombly, 550 U.S. at 556). "Detailed factual allegations" are

not required, but allegations must be more than "labels and

conclusions," or "a formulaic recitation of the elements of a

cause of action[.]"  Id. (quoting Twombly, 550 U.S. at 555).  In

considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

### 2.  Epps' Claim Pursuant to CLEC – Count I

CLEC contains specific rules which govern the repossession of property securing a loan.  See Md. Code Ann., Com. Law § 12-1021.  Specifically, CLEC requires that a notice be sent within five days after repossession and that it inform the borrower of his or her right to redeem the property, liability for a deficiency, as well as the exact location where the property is stored.  Id. § 12-1021(e).  Furthermore, CLEC requires that ten days before any sale, notice be given by specified means as to the time and place of the sale.  Id. § 12-1021(j)(1)(ii).  After a sale of repossessed goods CLEC also requires the creditor to make a full accounting to the borrower which includes informing the borrower of: expenses related to the sale, the purchaser's name, address, and business address, and the number of bids sought and received.  Id. § 12-1021(j)(2).

If a creditor violates these provisions, CLEC imposes limitations on the creditor's ability to collect any remaining debt from the borrower.  For example, § 12-1018(a)(2) provides that a creditor who violates the rules governing repossession

"may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan."  Section 12-1021(k)(4) prevents a creditor from obtaining a deficiency judgment against the debtor in the event of a violation.  Finally, creditors who knowingly violate the statute's requirements must "forfeit to the borrower 3 times the amount of interest, fees, and charges collected in excess" of what is permitted by CLEC.  Id. § 12-1018(b).

In Count I Epps alleges that Chase violated CLEC by (1) failing to notify her of the time and place that her vehicle was to be sold, in a writing sent by certified mail to her home, Compl. ¶ 59, (2) failing to provide her with the purchaser's name and address as well as the number of bids sought and received before the car was sold, Compl. ¶ 60, and (3) charging her for $840.50 for costs and expenses associated with the sale of her vehicle.  Compl. ¶ 34 & Ex. 3.  As a result of these alleged violations, Epps requests that this Court (1) enter an injunction prohibiting Chase from collecting any deficiency balance, interest, fees or costs, Compl., ad damnum ¶ B,(2) require that Chase return to her all sums she has paid as interest, costs, fees or other charges, Compl., ad damnum ¶ D, (3) require Chase to pay her three times the interest, costs, fees, and other charges that it has collected pursuant to § 12-1018(b), Compl., ad damnum ¶ F, and (4) require Chase to return

any money it has collected towards her deficiency balance. Compl., ad damnum ¶ E.

Chase argues Epps' claim should be dismissed because she has failed to allege that she has paid any fees above and beyond the outstanding principal of her loan and because Chase has not sought – and now promises not to seek, Def. Mem. in Support of MTD) at 6; ECF No. 48 (Reply in Support of MTD) at 9 – any of remaining loan balance. Def. Mem. in Support of MTD at 8. In addition, Chase argues it was required by CLEC § 12-1021(k)(2) to collect the $840.50 in fees from Epps to cover the expenses of the sale. Finally, Chase directs the Court to Judge Titus' recent decision in Bediako v. American Honda Finance Corp., 850 F. Supp. 2d 574 (D. Md. 2012), where, under similar facts, the Court dismissed the plaintiff's CLEC claim because it was damnum absque injuria (wrong without an injury).

In her Opposition, Epps admits she is seeking a drastic form of relief, ECF No. 45 (Opp'n to MTD) at 5, and builds her argument on two elements which taken together, she suggests, make clear that the relief she is seeking is, in fact, available under CLEC. Id. at 3-6, 9-12. First, Epps points to Brown v. Doug Griffith Dodge City, Inc., 453 A.2d 984 (Md. Ct. Spec. App. 1982), a case that was decided under the Maryland Retail Installment Sales Act (RISA). Md. Code Ann., Com. Law § 12-601 et seq. RISA governs extensions of credit that are not made

8

pursuant to CLEC.  Ford Motor Credit Co. v. Roberson, 25 A.3d 110, 121 (Md. 2011).  As a result, RISA and CLEC cover many of the same issues pertaining to extensions of credit such as allowable interest, repossession of collateral, and a buyer's right of redemption.  In Brown the plaintiffs sued the seller of a pickup truck after the seller repossessed the truck because the plaintiffs failed to make the required payments.  453 A.2d at 987.  The plaintiffs alleged that the contract of sale was null and void and that the seller was required to return to the plaintiffs all of the money that they had paid because the seller had failed to sign the contract, as required by RISA.[3]  Brown, 453 A.2d at 987.  The Maryland Court of Special Appeals held that it was compelled to apply the statute according to its "clear, definite, and unambiguous" terms despite the "harsh" result.  Id. at 991.  The court remanded the case for entry of judgment in favor of the plaintiffs in the full amount of the money they had paid under the contract.  Id. at 991.  Epps' apparent conclusion from Brown is that this Court must read CLEC

---

[3] Section 12-605(a)(2) of RISA provides: "If the seller does not sign [an exact copy of the installment sale contract as required by § 12-605(a)(1)], and if, within 15 days after the buyer signs the installment sale agreement, the seller does not deliver to the buyer a copy of it signed by the seller, the installment sale agreement and the instruments signed by the buyer are void without any action by the buyer, and the seller immediately shall refund to the buyer all of his payments and deposits."

by its exact terms no matter how harsh the result may be.  Opp'n to MTD at 6.

The second prong of Epps' argument consists of her emphasis on this Court's footnote in <u>Lambert v. National Motors, Inc.</u>, No. WMN-10-3522, 2011 U.S. Dist. LEXIS 48044, at *4 n.1 (D. Md. May 4, 2011).  There, the Court stated:

> The legislature enacted [RISA] in order to protect Maryland consumers from the abuses of sellers.  . . . This Act does not apply to the instant matter due to the contract language in electing to apply the Creditor Grantor Closed End Credit Provision [CLEC] . . . but its language and the legislative intent are instructive.

<u>Id.</u>  Epps argues that the combination of <u>Brown</u> and <u>Lambert</u> compels the conclusion that "Chase must not only refund all interest, costs and fees collected, but also must pay treble damages as a statutory penalty."  Opp'n to MTD at 6.

Epps places more weight on <u>Brown</u> and this Court's footnote in <u>Lambert</u> than either of them can bear.  Chase's argument, on the other hand, follows the well-reasoned logic of Judge Titus in <u>Bediako</u> and, in doing so, is more faithful to the first principle of Epps' argument than she is herself.  By the clear, unambiguous language of CLEC, Epps has failed to state a plausible claim for the relief which that statute affords. Nothing in the statute permits Epps to recover monetary damages under the facts contained in her Complaint.  This is true even

if one assumes that proceeds of the sale of Epps' vehicle were
used to cover the $840.50 that Chase incurred as costs
associated with that transaction.  Compl., Ex. 3; Opp'n to MTD
at 7-8.  The calculus here is identical to that in Bediako.  See
850 F. Supp. 2d at 582-83.  The RIC shows that Epps financed
$14,168.45.  Opp'n to MTD, Ex. A.  Epps made approximately
$7,000 in payments before defaulting.  Compl., Ex., 1. At a
private sale, Epps' vehicle commanded an additional $2,900.
Compl., Ex. 3.  Assuming these payments were applied only to the
principal of Epps' loan, Epps still owed approximately $4,268.45
exclusive of interest.  If the $840.50 Chase charged Epps as
costs of the sale were applied to the principal, as it arguably
should have been,[4] Epps would still have owed $3,427.95.  Because
CLEC permits a creditor who violates the repossession
requirements to collect the principal of the loan, § 12-
1018(a)(2), and only imposes a monetary penalty when the
creditor knowingly collects interest and fees in excess of the
principal, § 12-1018(b), Epps cannot state a claim for relief
under CLEC.  If an error exists here it is only on Chase's books

---

[4] In its reply brief Chase says that "[i]t merely applied the
proceeds of the sale to the outstanding debt as required by
law."  ECF No. 48 at 8 (citing § 12-1021(k)(2)).  The provision
on which Chase relies, however, only applies to public sales,
see § 12-1021(k)(1), which the sale of Epps' car, at least
according to the post-sale correspondence she received from
Chase, clearly was not.  See Compl. Ex. 3 ("On 1/25/2010 we sold
the above collateral at a private sale to the purchaser named
below.")(emphasis added).

for wrongly forwarding on to Epps the costs of the sale. Therefore, it is, at this stage, a wrong without an injury and the Court will dismiss Count I.

### 3.  The Maryland Consumer Protection Act – Count V

The Maryland Consumer Protection Act (CPA), Md. Code Ann., Com. Law §§ 13-101 et seq. sets "minimum standards for the protection of consumers in the State." Id. § 13-101(a).  It prohibits "unfair or deceptive trade practice[s]" in, inter alia, "the extension of consumer credit" and "the collection of consumer debts." Id. § 13-303.  Section 13-301 provides a long list of unfair or deceptive trade practices which includes any "false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," id. § 13-301(1), and "failure to state a material fact if the failure deceives or tends to deceive." Id. § 13-301(3).  The CPA also provides for extensive administrative and legal remedies.  For example, consumers may file complaints with the Division of Consumer Protection in the Office of the Attorney General, id. § 13-401, the Attorney General may seek an injunction prohibiting an individual from violating the Act, id. § 13-406, or "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited" by the Act.  Id. § 13-408(a).

In Count V, Epps alleges that Chase violated §§ 13-301(1), 13-301(3) and 13-303(3)-(4) of the CPA by "misrepresenting the final date up to which the vehicle could be redeemed" and notifying her "in writing that [she] owed [Chase] deficiency balances which, in fact, [she] did not owe and which [Chase] could not collect, due to its failures to comply with [CLEC]." Compl. ¶ 87.  Epps alleges that as a result of Chase's actions "members of the Repossession Class were induced to make payments to [Chase] on alleged deficiency balances, causing members of the Repossession Class injury or loss."  Compl. ¶ 90.  Epps does not allege that she, herself, suffered any such injury or loss. She does, however, allege that she and other members of the Repossession Class were subject to "false and misleading reports to credit reporting agencies regarding the amounts which [she] and members of the Repossession Class owed on their accounts, causing injury or loss."  Compl. ¶ 91.

Chase has moved to dismiss Epps' claim under the CPA arguing that Epps' failure to allege that she suffered any actual loss is fatal to her claim.  Mem. in Support of MTD at 11-12.  In opposing Chase's motion, Epps incorporates a portion of her Opposition to Chase's first Motion to Dismiss, ECF No. 15 at 21-22, identifying paragraphs in her Complaint which, she asserts, meet her obligation of alleging injury or loss.  Opp'n to MTD at 20.

It is clear that a plaintiff seeking to enforce the CPA pursuant to § 13-408(a) must allege and prove that she suffered "actual injury or loss." Citaramanis v. Hallowell, 613 A.2d 964, 969 (Md. 1992) ("Section 13-408(a) . . . requires an aggrieved consumer to establish the nature of the actual injury or loss that he or she has allegedly sustained as a result of the prohibited practice."); Berg v. Byrd, 720 A.2d 1283, 1286 (Md. Ct. Spec. App. 1998) ("[I]njury or loss is a prerequisite for a claim brought under CL § 13-408(a)."). To the extent that the allegations in the Complaint relate to Epps herself,[5] they are obviously deficient, see Compl. ¶ 41 (alleging that Epps was unable to tell how long she had to redeem her vehicles or whether the deficiencies claimed by Chase were reasonable); Compl. ¶ 87 (alleging that Epps received misleading statements, but failing to allege that she made any payments to Chase as a result), or conclusory and thus fail under the pleading

---

[5] Many of her allegations relate only to members of the putative Repossession Class. See Compl. ¶ 90 ("members of the Repossession Class were induced to make payments..."), ¶ 9 ("When the Repossession Class did not pay the dollar amount demanded on the post-repossession form letter, Chase sold their motor vehicles."). Others relate to no one in particular. See Compl. ¶ 14 ("If the consumer borrower does not pay the alleged deficiency, Chase files a collection lawsuit against the consumer or pursues other collection activities."). These allegations cannot be used to satisfy Epps' burden to state a plausible claim for relief because, as discussed above, Epps' Complaint must allege that she, herself, suffered "actual injury or loss" separate and apart from members of the putative Repossession Class.

standards of Fed. R. Civ. P. 8, Iqbal, and Twombly. See Compl. ¶ 91 (stating, simply that as a result of reports made to credit reporting agencies, Epps suffered "injury or loss"). For these reasons the Court will dismiss Count V.

### 4. Breach of Contract – Count II

In Count II, Epps alleges that Chase breached the RIC which covered the financing of her vehicle and which Chase purchased from Thompson. The RIC, as is required by Maryland law, incorporated the terms and requirements of CLEC. Compl. ¶ 27; Mem. in Support of MTD, Ex. A ¶ 6. Chase has moved to dismiss Count II because, it argues, Count II is derived from Epps' CLEC claim which is deficient because it fails to allege that Epps suffered any compensable damages under CLEC as a result of Chase's alleged violations of the repossession requirements. Def. Mem. in Support of MTD at 10-11.

To state a cause of action for breach of contract in Maryland, a plaintiff must allege that the defendant owed her a contractual duty and that the defendant materially breached that duty. Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001). Epps has done both. See Compl. ¶¶ 63-64. Chase's argument attacks only the damages to which Epps may be entitled. While Epps is not entitled to compensation under CLEC's penalty provisions, Chase's argument is nonetheless unavailing because a plaintiff need not allege damages to state a claim for breach of

contract.  See Taylor, 776 A.2d at 651 ("It is not necessary that the plaintiff prove damages resulting from [a] breach [of contract], for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages."); Wlodarek v. Thrift, 13 A.2d 774, 778 (1940) ("For every breach of a contract, there is a right of recovery of at least nominal damages."); Kleban v. Eghrari-Sabet, 920 A.2d 606, 627 (Md. Ct. Spec. App. 2007) ("A wrong without attendant harm is compensable only by nominal damages.").  By this standard, Epps has stated a plausible claim for at least nominal damages.  Therefore, the Court will deny Chase's motion as it relates to Count II.

## 5.  Unjust Enrichment – Count IV

In Count IV, Epps asserts a claim for unjust enrichment based upon the same facts she alleges in support of her CLEC claim.  See Compl. ¶¶ 77-81.  In Maryland, to state a claim for unjust enrichment, a plaintiff must allege that (1) she conferred a benefit on the defendant, (2) the defendant knew and appreciated the benefit, and (3) under the circumstances, the defendant's acceptance or retention of the benefit would be inequitable.  Mona v. Mona Elec. Group, Inc., 934 A.2d 450, 473 (Md. Ct. Spec. App. 2007) (quoting Benson v. State, 887 A.2d 525, 546 (Md. 2005)).  Where a contract exists between the parties covering the same subject matter as the unjust

16

enrichment claim, however, a plaintiff's claim for unjust enrichment must include an allegation of fraud or bad faith in the formation of the contract. Kwang Dong Pharm. Co. v. Han, 205 F. Supp. 2d 489, 497 (D. Md. 2002); Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc., 747 A.2d 600, 607–09 (Md. 2000).

Chase has moved to dismiss Count IV arguing that Epps has failed to make this necessary allegation. In her Opposition, Epps states that Count IV is pled in the alternative to her contract claim in Count II and, therefore, she is not required to allege fraud or bad faith. Opp'n to MTD at 24.

To properly follow Epps' argument would first require a finding that no contract existed between the parties or, at the very least, that the contract did not cover the same subject matter as her unjust enrichment claim. Neither finding is plausible. As discussed in note 2, supra, the Court can take notice of the RIC and its terms in deciding the instant motion, and it is clear that the RIC (1) exists, and (2) as a result of its incorporation of CLEC, covers the same subject matter as Epps' unjust enrichment claim. See Def. Mem. in Support of MTD, Ex. A ¶ 6. Count II will, therefore, be dismissed because Epps has failed to make the necessary allegation of fraud or bad faith in the formation of the RIC.

17

### 6.  Declaratory or Injunctive Relief – Count III

Epps, in Count III, seeks relief under Md. Code Ann., Cts. & Jud. Proc. § 3-406, which is part of the Maryland Declaratory Judgments Act.  That section provides:

> Any person interested under a deed, will, trust, land patent, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, administrative rule or regulation, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, administrative rule or regulation, land patent, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

Chase has moved to dismiss Count III arguing that declaratory judgments are a remedy and not a separate cause of action.  Mem. in Support of MTD at 13.  To support its position, Chase cites two cases from the Third Circuit Court of Appeals.  Id.  Chase's argument is not, however, supported by Maryland case law interpreting the Maryland Declaratory Judgments Act.  See e.g., Hatt v. Anderson, 464 A.2d 1076, 1077 (Md. 1983)(Plaintiff "filed a bill of complaint against [Defendant] seeking declaratory relief under the Uniform Declaratory Judgments Act"); Blind Indus. & Servs. of Md. v. Md. Dep't. of Gen. Servs., 808 A.2d 782, 784 (Md. 2002) (same);  Glover v. Glendening, 829 A.2d 532, 539 (Md. 2003) ("The plaintiff has

stated <u>a cause of action for a declaratory judgment</u> despite the
fact that the declaration will favor the defendants' position
and be adverse to the plaintiff's position.") (emphasis added).
Therefore, the Court will deny Chase's motion to dismiss Count
III.

**B.  EPPS' RENEWED MOTION FOR CLASS CERTIFICATION**

Epps has requested that the Court certify a class pursuant
to Fed. R. Civ. P. 23.  ECF No. 39 (Renewed Mtn. to Certify).
Epps proposes a class composed of:

> All persons whose vehicles were repossessed
> and sold by Chase pursuant to a credit
> contract governed by CLEC, and as to whom
> Chase:
> (a)  did not send the borrower a post
>      repossession letter that provided the
>      information required by CL § 12-
>      1021(e)(3); and/or,
> (b)  did not send the borrower the 10-days'
>      notice of the time and date of sale as
>      mandated by CL § 12-1021(j)(1)(ii);
>      and/or,
> (c)  did not send the borrower the post-sale
>      accounting and disclosures mandated by
>      CLEC, § 12-1021(j)(2).

<u>Id.</u>  In light of the Court's ruling on Chase's Motion to
Dismiss, <u>supra</u>, the only remaining claims for which a class may
be certified are Epps' claims for breach of contract (Count II)
and declaratory relief (Count III).  Epps is not entitled to
class certification on either count because she has failed to
satisfy the requirements of Rule 23(a).

### 1.   Requirements for Class Certification

Class certification pursuant to Rule 23 is a two-step process.  The party seeking certification must initially meet the requirements of Rule 23(a).  That provision requires the party to demonstrate:

> the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

These four requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  Each of them must be satisfied, although the latter three "tend to merge" into an overall consideration of "whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  General Tel. Co. v. Falcon, 457 U.S. 147, 157 n.13 (1982).

In the wake of the Supreme Court's opinion in Wal-Mart Stores, Inc. v. Dukes, --- U.S. ---, 131 S. Ct. 2541 (2011), parties seeking class certification face a heavy burden. Specifically, the party "must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove

that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id. at 2551 (emphasis in original).  Nonetheless, the decision of whether to certify a class or not is "left to the sound discretion of the district court and any such decision will only be reversed upon a showing of abuse of that discretion." Scott v. Haworth, 916 F.2d 134, 139 (4th Cir. 1990); see also Gray v. Hearst Communications, Inc., 444 F. App'x 698, 700 (4th Cir. 2011).

The second step in the certification process requires the party requesting certification to meet at least one of the conditions of Rule 23(b).  Here, Epps seeks certification pursuant to Rule 23(b)(3).  For the reasons discussed below, however, the Court need not consider the requirements of Rule 23(b)(3) in this case because Epps has failed to meet her burden under Rule 23(a).

### 2. Class Certification on Epps' Contract Claim Is Inappropriate for Lack of Commonality

Epps argues that "the commonality requirement is clearly satisfied because the issues before the court in connection with the Repossession Class are legal ones that will be resolved by a comparison of the CLEC repossession requirements to the Defendant's written documents." ECF No. 10-1 (Mem. in Support of Mtn. to Certify) at 9.  Epps' argument may indeed be true as it relates to determining liability.  Commonality in this case,

however, is more problematic as it relates to the calculation of damages.  Because Epps is not entitled to compensation pursuant to the CLEC penalty provisions, for the reasons outlined above, she could only represent (i.e., her claim could only be typical of) a class of individuals who may be entitled to traditional contract damages.

The Fourth Circuit has invalidated classes, see Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331 (4th Cir. 1998), and upheld denials of certification, see Windham v. American Brands, Inc., 565 F.2d 59 (4th Cir. 1977), where proof of damages required inquiry into each individual class member's circumstances.  Broussard involved the breach of franchise agreements for which class members sought lost profits.  155 F.3d at 342-43.  The court questioned both commonality and typicality and held that "the calculation of lost profits is too 'dependent upon consideration of the unique circumstances pertinent to each class member'" to permit certification.  Id. at 343 (quoting Boley v. Brown, 10 F.3d 218 (4th Cir. 1993)).

Just as in Broussard, assessing damages for breach of contract under Maryland law would require significant consideration of each class member's individual circumstances. In Maryland, a "non-breaching party may recover damages for 1) the losses proximately caused by the breach, 2) that were reasonably foreseeable, and 3) that have been proven with

22

reasonable certainty." Hoang v. Hewitt Ave. Assoc's, 936 A.2d 915, 934 (Md. Ct. Spec. App. 2007). This includes damages that the non-breaching party actually suffered, id., as well as those that naturally arose from the breach, and those "such as may fairly and reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." Winslow Elevator & Mach. Co. v. Hoffman, 69 A. 394, 396 (Md. 1908) (quoting Hadley v. Baxendale, 9 Exch. 341 (1854)) (emphasis in Winslow). Proof of damages under this standard is not amenable to class-wide proof and, for this reason, the Court will deny Epps' request for class certification as it relates to her claim for breach of contract.

### 3. Class Certification on Epps' Request for Declaratory Judgment Is Inappropriate for Lack of Typicality

As noted above, Chase's Motion to Dismiss and Epps' Motion for Class Certification implicate related issues. Epps' Count III, seeking a declaratory judgment and injunctive relief under Md. Code Ann., Cts. & Jud. Proc. § 3-406, survived Chase's Motion to Dismiss because Chase argued for dismissal based on an incorrect understanding of pleading this particular request for relief in Maryland. On the same count, however, Epps fails to meet the requirements for class certification because her claim

for declaratory relief is not "typical of the claims ... of the class." Fed. R. Civ. P. 23(a)(3).

"[T]he existence of a justiciable controversy is an absolute prerequisite to the maintenance of a declaratory judgment action" in Maryland. Hatt v. Anderson, 464 A.2d 1076, 1078 (Md. 1983). A justiciable controversy requires "an actual controversy; antagonistic claims indicating imminent and inevitable litigation; or the assertion and denial of a legal relation, status, right or privilege." Prince George's Cnty. v. Bd. of Trustees of Prince George's Cmty. Coll., 304 A.2d 228, 230 (Md. 1973).

The record in the present case indicates that no justiciable controversy exists between Epps and Chase.[6] The absence of a justiciable controversy is apparent from both Epps' Complaint and the parties' briefing on the motions sub judice.[7]

---

[6] Failure to allege a justiciable controversy could have been a basis for this Court's sua sponte dismissal of Epps' Count III. Carson v. NCOP Acad. for Paralegals, Civ. No. WN-94-2263, 1995 WL 819050 (D. Md. Feb. 21, 1995) ("A district court may sua sponte enter dismissal pursuant to Rule 12(b)(6) where a plaintiff cannot possibly be awarded relief."), aff'd sub nom. Carson v. Nat'l Certifying Org. for Paralegals, 76 F.3d 371 (4th Cir. 1996); see also Baker v. Director, United States Parole Comm'n, 916 F.2d 725, 272 (D.C. Cir. 1990). In light of the jurisdictional issues discussed in Part C, however, the Court declines to exercise its discretion to dismiss Epps' Count III on grounds beyond those raised by Chase.

[7] While, at the certification stage, a court should not seek to evaluate the merits of the underlying claim, "some preliminary inquiry into the merits may be necessary for an intelligent

In her Complaint, Epps fails to allege that Chase collected
money from her above the amount to which it was entitled, sought
a deficiency judgment against her, or pursued any other course
of action which may have violated CLEC.  See Compl. ¶¶ 68-70
(seeking declaratory judgment) and ¶¶ 72-74 (seeking injunctive
relief).  In addition, Chase has promised not to pursue Epps for
any deficiency that she may owe.  See Def. Mem. in Support of
MTD at 6; Reply in Support of MTD at 9; Opp'n to Mtn. to Certify
at 13.  Thus, to the extent that Epps seeks to represent a class
of individuals who have been pursued by Chase for deficiency
balances[8] - the only persons who may be able to allege the
requisite "justiciable controversy" - her claim is atypical and
certification is inappropriate.

**C.  Jurisdictional Considerations - Remand to State Court**

This action was originally filed in the Circuit Court for
Baltimore City.  Chase removed it to this Court pursuant to the
Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d).

---

determination of whether to certify the class." Minter v. Wells
Fargo Bank, N.A., 279 F.R.D. 320, 324 (D. Md. 2012); see also
Dukes, 131 S. Ct. at 2551 ("sometimes it may be necessary for
the court to probe behind the pleadings before coming to rest on
the certification question.")(quoting Falcon, 457 U.S. at 160).

[8] Epps' proposed class fails to include any limitation that would
ensure that class members had been pursued for payments or
judgments that would violate CLEC.  A class that includes both
individuals who have been pursued for payments or judgments and
those, like Epps, who have not, also fails to satisfy the
commonality requirement of Rule 23(a)(2).

ECF No. 1 (Notice of Removal).  CAFA grants original jurisdiction to federal courts in "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 . . . and is a class action in which- (A) any member of a class of plaintiffs is a citizen of a State different from any defendant."  Id. at § 1332(d)(2).  Thus, three requirements must be met if a court is to properly exercise jurisdiction under CAFA: (1) diversity of citizenship, (2) an amount in controversy greater than $5,000,000, and (3) status as a class action.  In the present case, the Court's foregoing rulings on Chase's Motion to Dismiss and Epps' Renewed Motion for Class certification have eliminated the crucial element for CAFA jurisdiction – the existence of a class action – and thus require that the case be remanded to state court.

Courts around the country have split as to the appropriate course following a denial of class certification.  Some have concluded that "CAFA changed the requirements for meeting diversity jurisdiction for class actions, but did not establish a new basis for jurisdiction."  Genenbacher v. CenturyTel Fiber Co. II, LLC, 500 F. Supp. 2d 1014, 1015 (C.D. Ill. 2007) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 291-95 (1938)).  Under this line of reasoning a denial of class certification subsequent to filing the complaint in federal court, or removal from state court, yields the same result as a

change to the residency of the parties or the amount in controversy: jurisdiction is not destroyed.  Id.  Another group of cases holds that remand to state court or dismissal is appropriate when certification is denied because the denial is a determination that "a class action did not exist at the time of removal, therefore, removal jurisdiction never existed." Salazar v. Avis Budget Group, Inc., No. 07-cv-0064-IEG, 2008 WL 5054108, *5 & *6 (S.D. Cal. 2008) (emphasis in original).

The Court will follow this latter line of cases for two reasons.  First, they are more faithful to the text and intent of CAFA.  CAFA clearly requires the existence of a "class action," 42 U.S.C. § 1332(d)(2), which it defines as any action filed under Rule 23.[9]  Id. § 1332(d)(1)(B).  Courts following this line of reasoning have astutely recognized that a "class action" is unlikely to exist at the time the case is filed in or

---

[9] Some courts have focused on the phrase "filed under" in § 1332(d)(1)(B) to conclude that a denial of class certification does not require remand or dismissal.  See Cunningham Charter Corp. v. Learjet, Inc., 592 F.3d 805, 806 (7th Cir. 2010) ("jurisdiction attaches when a suit is filed as a class action, and that invariably precedes certification") (emphasis in original); Coll. Of Dental Surgeons Of Puerto Rico v. Conn. Gen. Life Ins. Co., 585 F.3d 33, 39-40 (1st Cir. 2009)("To satisfy CAFA's definition of a class action, a case need only be "filed under" either Federal Rule of Civil Procedure 23 or some state-law analogue of that rule.")(emphasis in original).  A better view of this provision, however, is that it is another indication of Congress' intent to extend jurisdiction under CAFA only to the extent necessary to make a determination on certification and thus the existence of a class action as required by § 1332(d)(2).  Salazar, 2008 WL 5054108 at *6.

removed to federal court.  See Clausnitzer v. Federal Exp.
Corp., 621 F. Supp. 2d 1266, 1270 (S.D. Fla. 2008); Falcon v.
Phillips Elec. N. Am. Corp., 489 F. Supp. 2d 367, 368 (S.D.N.Y.
2007).  This is because Rule 23 requires a party seeking
certification to meet the numerosity, commonality, typicality
and representation requirements of Rule 23(a) and it requires
action by the court to "determine by order whether to certify
the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A).
The certification requirement distinguishes the existence of a
class action from jurisdictional facts such as minimum diversity
or an amount in controversy requirement, which must be alleged
to exist at the time of removal and which, if subsequently
eliminated, would not destroy jurisdiction.  Clausnitzer 621 F.
Supp. 2d at 1270.  Rather, it suggests that Congress intended
the existence of a class action to be a "legal conclusion that
the district court must reach in order for jurisdiction to
properly exist in the first place."  Id.  Second, this line of
cases hews closer to the overarching and important principle
that federal courts are courts of limited jurisdiction.  See id.
(quoting Krokkonen v. Guardian Life Ins. Co. of Am., 511 U.S.
375, 377 (1994)).  Therefore, in light of the Court's denial of
Epps' request for certification and because Epps has not alleged
additional facts which would support jurisdiction under 28

U.S.C. § 1332, the Court will remand the case to the Circuit Court for Baltimore City pursuant to 28 U.S.C. § 1447(c).

## III.   CONCLUSION

For these reasons, the Court concludes that Chase's Motion to Dismiss will be granted in part and denied in part; Epps' Motion for Class Certification will be denied; and the case will be remanded to the Circuit Court for Baltimore City for lack of subject matter jurisdiction.   A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge

October 22, 2012.